329 So.2d 82

**UTICA MUTUAL INSURANCE CO.,**
a corporation

v.

**TUSCALOOSA MOTOR CO., INC.,**
a corp., et al.

**SC 993.**

Supreme Court of Alabama.

Feb. 20, 1976.

Rehearing Denied April 9, 1976.

Hubbard, Waldrop & Jenkins, Tuscaloosa, for appellant.

Roberts, Davidson & Gibson, Tuscaloosa, for appellees.

**EMBRY, Justice.**

Appeal by Utica Mutual Insurance Company from adverse decisions in two declaratory judgment actions consolidated for trial. Utica was Tuscaloosa Motor's garage liability insurance carrier until 1 June 1970; on that date Auto-Owners Insurance Company became Tuscaloosa Motor's garage liability insurance carrier.

The facts: Tuscaloosa Motor Company made repairs to the respective cars of Annie Nuckols and Lloyd Johnson. It was stipulated at trial that these repairs were made during the period the Utica policy was in effect. On 1 July 1970 the Nuckols automobile was involved in an accident that resulted in damage to it and bodily injury to Nuckols; on 7 August 1970 the Johnson auto was involved in an accident resulting in damage to it. In each instance *damage and injury* occurred during the period Auto-Owners policy was in effect. Nuckols filed an action for damages against Tuscaloosa Motor alleging that proximate cause of the bodily injury and property damage was negligence of Tuscaloosa Motor in making repairs. Johnson filed an action for damage to an automobile on the same theory of negligence of Tuscaloosa Motor Company.

Utica's agent, E. Cecil Carver, received notice of Johnson's claim on 10 August 1970 and Nuckols' claim on 18 November 1970. Utica initially undertook to investigate and defend these claims. On 29 September 1971 Utica notified Tuscaloosa Motor of its intent to withdraw from defense of the Johnson case and on 10 February 1972 of its same intent as to the Nuckols case.

Subsequently, Auto-Owners Insurance Company and Tuscaloosa Motor Company filed an action seeking declaration that Utica was required to defend against and be liable for any judgment arising out of *Johnson's* suit. Utica filed a declaratory judgment action seeking a determination that it was not required to defend against nor be liable for any judgment arising out of *Nuckols'* suit. The trial court found *Utica* liable to defend against and pay any judgments rendered in both the Johnson and Nuckols suits. It found Auto-Owners liable only for any "excess" damages over and above the limits of liability of the Utica policy.

The only issue essential to a decision is: (1) Does the Utica policy cover a liability for negligent *repairs performed during the policy period* when *bodily injury*

*or property damage occurs after expiration* of the policy period?

The insuring clause in Utica's policy reads:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

G. bodily injury or

H. property damage

to which this insurance applies, caused by an occurrence and arising out of garage operations * * *"

An "occurrence" is defined in the Utica policy as:

" * * * an accident * * * which results, during the policy period, in bodily injury or property damage neither expected not intended from the standpoint of the insured;"

In the "Policy Period; Territory" section, the Utica policy reads:

"This insurance applies only to bodily injury, property damage or loss which occurs during the policy period * * *"

"Loss" is defined in the policy as "direct and accidental loss of or damage to property."

The trial court found the Utica policy covered a liability for negligent repairs performed *during* the policy period when bodily injury or property damage occurred *after* expiration of the policy. To reach this result the trial court first determined that there was an ambiguity in the policy. Necessary to an understanding of how the trial court reached this conclusion are certain provisions of its order and judgment.[1] In part, findings in that judgment read:

" 'Occurrence' is defined in the definitions section of the Utica policy as: '(An) *accident* . . . which results,

*during the policy period,* in bodily injury or property damage neither expected not intended from the standpoint of the insured.' The Alabama Courts have consistently held that the term 'accident' in a liability insurance policy is broad enough to afford coverage when the negligence occurs during the policy period—though the actual damage resulting from that negligence may not arise until after the policy expires. Thus, in viewing the term 'accident' in the definition of 'occurrence' in Utica's policy, this Court concluded that the Alabama Courts have interpreted this terminology as broad enough to provide coverage in situations such as those in the two damage suits. However, the Court had next to determine whether the accident resulted *during the policy period* in bodily injury or property damage.

"Paragraph IV of 'Policy Period; Territory,' of Utica's policy provides that: 'This insurance applies to bodily injury, property damage *or loss* (emphasis added) which occurs during the policy period.' It is uncontroverted that no bodily injury or property damage was incurred by either customer during Utica's policy period. Thus, the issue was reduced to whether or not the term 'loss' as defined in Utica's policy was ambiguous such that Utica's conduct under its policy was relevant to a determination of the meaning of the term.

\*     \*     \*     \*     \*     \*

"First of all, by Utica's employment of the term 'accidental' in its definition of 'loss' an ambiguity was created because of the fact that the Alabama Courts have interpreted the word 'accident' as broad enough to encompass prior negligence which results in subsequent damage (see the discussion *supra*). Secondly, the Alabama Courts have consistently given the term 'loss' a broad meaning, includ-

1. We do not necessarily approve or disapprove of any statement of law expressed in the judgment of the trial court, and upon which we do not rule. His decree is reproduced merely to facilitate understanding by a reader of this opinion.

ing a connotation broad enough to encompass an 'injury'. E. g., *Mason v. City of Albertville,* 276 Ala. 68, 71; 158 So.2d 924 (1963). And it is axiomatic that a person incurs a legal injury at the time a person who owes him a duty commits a negligent act, rather than at the time the resultant damages accrue. Thus, the question became whether Utica, by its conduct, had indicated the intention that this was the meaning the term 'loss' was to be given in its policy.

"IT IS, THEREFORE, THE ORDER, JUDGMENT AND DECREE OF THE COURT that on trial the Court finds that the actions of Utica in assuming the responsibility for investigating and defending, for a period of months with no reservation of rights, the possible liability of Motor Co. clearly shows that it interpreted its policy to cover the incidents in question. The Court thus holds and declares that Utica is responsible for investigating and defending the suits in question and that Utica should bear any liability which Motor Co. might incur as a result of its negligence causing the two accidents.

"IT IS THE FURTHER ORDER, JUDGMENT AND DECREE OF THE COURT that Auto-Owners is only liable for any 'excess' damages over and above the limits of liability of Utica's policy.

"The Court finds it unnecessary to reach the issues of waiver and estoppel because these actions can be resolved based on the rationale discussed above. * * *"

We cannot agree that the policy language is ambiguous. The trial court recognized that no bodily injury or property damage occurred during the policy period. However the trial court found ambiguity in the policy because the term "loss" was included in the "Policy Period; Territory" clause but was not included in the definition of "occurrence." In the trial court's view ambiguity was created because one clause predicated Utica's liability under the policy on bodily injury or property damage occurring during the policy period while another clause predicated liability on bodily injury, property damage or *loss* occurring during the policy period.

The clear meaning of the policy language is that coverage is afforded only when bodily injury, or damage to or *loss of* property is suffered during the policy period irrespective of when the negligent act was performed which later resulted in such bodily injury, or damage to or loss of property. See *Mut v. Newark Insurance Co.,* 289 So.2d 237 (La.App.1973) (reaching same result). Since there is no ambiguity, we need not construe the term "accident" as used in the policy. The determinative factor is not when the "accident" (negligent act) took place, rather, it is whether or not the bodily injury, or damage to or loss of property happened during the policy period.

■ Based upon this conclusion we must enforce the policy as written and may not indulge in construction favorable to the insured. *Green v. Merrill,* 293 Ala. 628, 308 So.2d 702 (1975); *Aetna Insurance Co. v. Pete Wilson Roofing & Heating Co., Inc.,* 289 Ala. 719, 272 So.2d 232 (1973). Since the bodily injury and loss of or damage to the property did not occur during the policy period, Utica's policy does not afford coverage.

Appellees argue in brief that Utica is estopped to deny coverage. Like the learned trial judge, we find it unnecessary to reach the question of estoppel. There is no ambiguity in Utica's policy; Utica is not liable under it to defend against and pay any judgments resulting from the Nuckols and Johnson actions.

Understandably the result in this case will appear harsh to the insured. It is the opinion of the author of this opinion that the law of Alabama *under the issues presented on this appeal* will permit no other result.

Insureds are not without remedy however. Code of Ala., Tit. 28A, § 321, provides for filing with and approval by the Alabama Commissioner of Insurance of insurance policy forms. Such forms are deemed approved at the expiration of thirty days from filing unless prior thereto there has been affirmative approval or disapproval. Under the provisions of § 322(5) of the same Code Title the Commissioner may disapprove or withdraw previous approval of a policy form if it:

> "Contains provisions which are unfair or inequitable or contrary to the public policy of this state, or which would because such provisions are unclear or deceptively worded, encourage misrepresentation."

If, in the future, the Commissioner of Insurance because of limitations of manpower and time is not able to cause filed forms of policies of insurance to be scrutinized under the standards set out in § 322 and in particular § 322(5) this court may be compelled to declare the public policy of this State per the views expressed by Justices Jones and Shores in their dissent in this case.

REVERSED AND REMANDED.

MADDOX and ALMON, JJ., concur.

MERRILL and FAULKNER, JJ., concur in result.

HEFLIN, C. J., and BLOODWORTH, JONES and SHORES, JJ., dissent.

JONES and SHORES, Justices (dissenting):

We note that while the majority of the Court decides this case to reversal, it does not decide the issue presented. Tit. 13, § 14, Code, as amended. Mr. Justice Embry's opinion, with which a majority of this Court concurs in the result, finds no ambiguity (the basis of the trial Court's holding) and grounds its reversal on the "free-dom to contract" principle. As to the ambiguity issue, we agree. We would affirm the trial Court, however, for the reasons expressed below.

The freedom to contract rule, particularly in instances involving adhesion contracts, where the contracting parties are not equally capable of negotiating the terms, should be tempered by the dictates of public policy. In the case before us, its unchecked application would allow successive insurance policies to create a hiatus in coverage with no break in premium obligations. Some factual examples will demonstrate the fallacy: Suppose, for example, the Auto-Owners' policy read differently from Utica's to the effect that "occurrence" meant the negligent or wrongful act which culminates in liability; or, alternatively, suppose Auto-Owners, under identical language, asserted the defense that no coverage was afforded for negligent acts which preceded the policy period. Would each insurer then have an absolute defense even though the insured had paid for continuous coverage?

Still worse, suppose the coverage remained with Utica and the contract of insurance for the new policy period substituted the latter definition of "occurrence," could Utica then plead the alternative defenses under the identical policy language? Would we then hold "no coverage" on the "freedom to contract" principle? If so, we would have invited the insurance industry to alternate definitions of language for successive policy periods and thereby create indefinite gaps in coverage; and, in so doing, we would have interpreted the language here involved adverse to the insured in each instance where the total transactions necessary to the accrual of an action did not occur within the policy period—all of this, in spite of the insured's payment of premiums for continuous protection.

In the event Auto-Owners' "ex post facto coverage" defense is rejected, from the standpoint of public policy, there are inherent evils in the imposition of liability against the insurer arising out of a wrong-

ful act of its insured which takes place prior to the policy period. This would allow an uninsured, suspicious that his employee has performed negligent repairs likely to cause an immediate accident, to insure against a loss which is almost certain to occur. Such risks on behalf of the insurer would far exceed that normally contemplated by contracts of insurance. The only element in the total chain of the liability-producing events within the exclusive control of the insured is the initial wrongful act. While the injury-producing accident must result directly from the culpable conduct of the insured, ordinarily such subsequent consequences lie beyond the insured's immediate control as to time and place of occurrence. Thus, public policy favors contracts of insurance in such cases which fixes the coverage concurrent with the time of the insured's culpable conduct—making the insured's and the insurer's legal obligations coextensive.

Other examples may further elucidate problem potentials. Suppose the garage owner permanently terminated his business operations concurrent with the expiration date of the policy period. Should he continue his insurance for an additional policy period? And, if so, assuming an insurer would be willing to write the risk, could the latter company successfully defend, even under the identical language here involved, on the ground that the public policy would void coverage for risks antedating the policy period?

Only a minimum of imagination is required to visualize the myriad problems arising from such restrictive language in professional malpractice and errors and omissions policies.

We turn now to the case at hand. What was the insured insuring against? What risks did it attempt to cover? Tuscaloosa Motor Company's legal responsibilities arising out of its business operations are fixed by operation of law. The law dictates that any injury or damage resulting directly from its culpable conduct is actionable and the action for such injury or damage may be maintained against it by an injured party upon the accrual of such action and for the applicable period of limitations.

The language of the insuring clause of this policy commits Utica to "pay on behalf of the insured all sums which the insured shall become *legally obligated to pay as damages* . . ." Tuscaloosa Motor Company, Inc., could not be "legally obligated to pay as damages" any amount to either Johnson or Nuchols until it breached some duty resulting in injury to them.

A cause of action did not accrue in favor of either Johnson or Nuchols against Tuscaloosa Motor Company until each of them was actually injured, whether in person or property. A right of action against the insured did not accrue until the injury actually occurred. *West Pratt Coal Co. v. Dorman,* 161 Ala. 389, 49 So. 849 (1909). Therefore, the insured could not become legally obligated to pay before that time.

By virtue of the definition of "occurrence," Utica restricts its liability to ". . . an accident . . . which results, during the policy period, in bodily injury or property damage . . . ."[1] While Tuscaloosa Motor Company's liabil-

1. For the history of the various clauses included in the policy and their purported purpose see: Long, *The Law of Liability Insurance,* Mathew Bender, 1969. The author observes that the "occurrence" provision "presents baffling problems since it has to do with a situation the reverse of the traditional one of coverage 'caused by accident.' But there is a substantial difference between accident and occurrence. The substitution of the word 'occurrence' confronts the insurance industry with new and special problems. They may arise out of court expansion of the scope of the coverage far greater than that intended by the underwriters when the substitution of words was made.

"The intent of the underwriter being to cover gradual injury, it should follow that the injury could be exposure to a continuing condition resulting in injury extending over more than one policy period . . . .

"When damage is caused by exposure to a condition extending over policy periods of successive policies, the question is presented as to which policy is answerable. . . ."

ity, by operation of law, runs to an injured party from the moment of injury to the running of the statute of limitations, the liability of Utica to Tuscaloosa Motor Company extends only to injury-producing accidents occurring within the policy period.

Thus, by contract Utica has limited its liability to its insured to a definable time limit unrelated to the length of exposure which the law imposes on Tuscaloosa Motor Company.

In this case, Tuscaloosa Motor Company has been sued by two plaintiffs alleging negligence resulting in injury or damage. The alleged act of negligence by Tuscaloosa Motor Company occurred within the policy period. Utica, however, disclaims liability since the injury or property damage did not occur during the policy period, but concedes that the act of its insured, allegedly producing such injury or property damage, did occur within the policy period.

Utica, therefore, stands absolved of the very liability to which its insured is exposed by operation of law notwithstanding the fact that the policy commits Utica to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay . . ."

Undoubtedly, it is this anomaly which prompted the trial Court to conclude that the policy provisions created an ambiguity which it resolved in favor of the insured. We agree with Utica, however, that the policy provisions are clear as to their meaning and intent. A reading of the language of the policy leaves no uncertainty that Utica by contract has limited its risk of loss by definition of the term "occurrence" to the extent set out above. It is not on the basis of ambiguity that we would affirm the trial Court, but rather because the incongruity results in an anomaly which the public policy of this State cannot sanction.

The provisions of this policy, although unambiguous, leave Tuscaloosa Motor Company without a remedy against Utica for the very liability it sought insurance to protect against. Likewise, it leaves the plain-

tiffs (Johnson and Nuchols) without the protection which Tuscaloosa Motor Company sought to provide through its insurance contract with Utica. This result offends the public policy of this State.

As observed by Judge Walter Gewin in *Northwestern Casualty Co. v. McNulty,* 307 F.2d 432 (5th Cir. 1962):

"Implicit in the entire field of tort liability and insurance law is the concept of furnishing some protection to those who are injured. Public policy is involved here . . . ."

We, therefore, would affirm the trial Court in holding Utica liable under its policy.