JAMES & HACKWORTH, Architects, a partnership; Rives Construction Company, a partnership, Plaintiffs,

v.

CONTINENTAL CASUALTY COMPANY, a corporation, Defendant.

Civ. A. No. CA 78–X–0934–S.

United States District Court, N. D. Alabama, S. D.

May 21, 1980.

Robert C. Moorer, Birmingham, Ala., for James & Hackworth.

H. Darden Williams of Rutledge, Williams, Williams & Norton, Anniston, Ala., for plaintiffs.

Bibb Allen of London, Yancey, Clark & Allen, Birmingham, Ala., for defendant.

OPINION

GROOMS, District Judge.

This case is before the Court on motions for summary judgment.

In March 1973, plaintiff James & Hackworth entered into a contract with Westchester Apartments, Ltd. and Haversham Townhouses to provide plans and specifications for apartment projects to be constructed in Jefferson County, Alabama. Plaintiff Rives Construction Company, a partnership, was a general partner in West-

chester and Haversham. At that time the defendant, Continental Casualty Company, was the insurer providing liability coverage to James & Hackworth, under its Architects and/or Engineers' Professional Liability Policy No. AEL 821 83 96, initially issued to cover the policy period from May 11, 1970, to May 11, 1971. The last premium paid was for the period May 11, 1973, to May 11, 1974. James & Hackworth did not pay the premium for any policy period thereafter, and duly received notice of the policy's alleged lapse for non-payment.[1]

The policy also contains a rider which provides:

"In consideration of the premium charged, it is hereby understood and agreed that this policy shall not be cancelled, changed, allowed to lapse or allowed to expire until thirty (30) days after written notice to: Mortgagee and Secretary of the Department of Housing and Urban Development, 230 Peach Street, N.E., Suite 1116, Atlanta, Georgia, 30303"

On September 22, 1975, Rives, who did the construction work, filed suit against James & Hackworth in the Circuit Court of Jefferson County, Alabama, for breach of contract by James & Hackworth. Following remand to this court, a judgment was rendered in favor of Rives on January 23, 1978, in the amount of $783,159.00, with $372,492.00 and $410,667.00 attributable to the Westchester and Haversham jobs, respectively. This action followed the rendition of the judgment.

The policy here involved provides that: "The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages if legal liability arises out of the performance of professional services for others in the insured's capacity as an architect or engineer and if such legal liability is caused by an error, omission or negligent act of the insured or of any

person or organization for whom the insured is legally liable."

The Alabama Code 1975, §§ 27–23–1 & 2, provides, under the conditions therein set out, for a recovery by a judgment creditor against the insurer in a case such as the one now before the Court.

The policy contains a provision designated III(b) reading:

"The insurance afforded by this policy applies to errors, omissions or negligent acts which occur on or after the date stated in item 6 of the declarations (the effective date of the first policy issued and continuously renewed by the Company) provided that claim therefor is first made against the insured during this policy period and reported in writing to the Company during this policy period or within 60 days after the expiration of this policy period."

The effective date of the first policy in item 6 is May 11, 1970.

The policy recites that it is issued "in consideration of the payment of the premium . . ."

The defendant contends that by virtue of the provision of III(b) above quoted the policy is a "claims made" or "discovery" type policy, and not an "occurrence" policy, and that the rider first above quoted was made only for the benefit of the Mortgagee and the Secretary of the Department of Housing and Urban Development, and not for the benefit of Rives whose rights it asserts are derived through the insured James & Hackworth.

Plaintiffs contend that in view of a non-compliance with the rider there was no effective cancellation that would bar Rives' right to a recovery and that in any event the so-called "claims-made" policy provision is void as against public policy and should be treated as an occurrence policy provision.

The notice of the filing of the lawsuit by Rives was the first notice that the defend-

1. The policy contained a general cancellation provision reading as follows:

"[I]f the Company cancels the policy because the named insured has failed to pay a premium when due, this policy may be canceled by the Company by mailing a written notice of cancellation to the named insured at the address shown in this policy stating when, not less than ten days thereafter, such cancellation shall be effective."

ant received of any claim under the policy. By letter of December 24, 1975, the defendant wrote the insured stating that since the claim was being made approximately one year and five months after the policy expired on May 11, 1974, there was no coverage under the policy. It specifically referred to and quoted the rider set out in paragraph III(b) and disclaimed liability.

As to the enforceability and validity of "claims made" policies, defendant relies on *Samuel N. Zarpas, Inc. v. Morrow*, 215 F.Supp. 887 (D.C.N.J.1963); *San Pedro Properties Inc. v. Sayre and Toso, Inc.*, 203 Cal.App.2d 750, 21 Cal.Rptr. 844 (1962); *J. M. Brown Construction Co. v. D & M Mechanical Contractors, Inc.*, 222 So.2d 93 (La. App.1969); *Livingston Parrish School Board v. Fireman's Fund Am. Insurance Co.*, 282 So.2d 478 (La.App.1973), and other Louisiana appellate decisions. Also, *Lehr v. Professional Underwriters*, 296 Mich. 693, 296 N.W. 843; *Reid v. Dayton Title Co.*, 31 Ohio Misc. 275, 278 N.E.2d 384 (1972); *Cornell, Howland, Hayes & Merryfield Inc. v. Continental Casualty Co.*, 465 F.2d 22 (9 Cir. 1972); *Gereboff v. Home Indemnity Co.*, 383 A.2d 1024 (R.I.1978); *James J. Brogger & Associates Inc. v. American Motorists Insurance Co.*, 595 P.2d 1063 (Colo.App. 1979); and *Utica Mutual Ins. Co. v. Tuscaloosa Motor Co., Inc.*, 295 Ala. 309, 329 So.2d 82.

The plaintiffs rely on *Jones v. Continental Casualty Co.*, 123 N.J.Super. 353, 303 A.2d 91 (1973); *J. G. Link & Company v. Continental Casualty Co.*, 470 F.2d 1133 (9 Cir. 1972).

■ Without resort to an analysis of the various decisions, the Court is of the opinion that III(b) of the policy renders this a "claims-made" or "discovery" type of policy rather than an "occurrence" policy, and that the provision is not contrary to the public policy of the state. This conclusion is buttressed by the rationale of the holding in *Utica Mutual, supra.* In that case the policy covered "bodily injury, property damage, or loss, which occurred during the policy period." Negligent repair to an automobile, which resulted in an accident causing the property damage, was made during the policy period. The accident occurred after the policy period. The court held that the policy would be enforced as written, stating that:

"The clear meaning of the policy language is that coverage is afforded only when bodily injury, or damage to or *loss of* property is suffered during the policy period irrespective of when the negligent act was performed which later resulted in such bodily injury, or damage to or loss of property." [2]

With respect to public policy, in the Court's opinion this conclusion neither contravenes Section 27–23–2 of Alabama Code 1975, nor Section 6–2–15 prohibiting the shortening of the statutes of limitation.[3]

Did the policy continue in force and effect after May 11, 1974, as to Rives, by virtue of the undisputed failure of the defendant to give notice of cancellation to the Mortgagee?

The Supreme Court of Alabama holds that, "the terms of the policy imposing obligations on the insured are effective as against the injured party," even though the injured party acquires a vested interest by way of hypothecation. *George v. Employers' Liability Assur. Corporation*, 219 Ala. 307, 122 So. 175.

Referring to the predecessor of Section 27–23–2, the court in *State Farm Mutual Automobile Ins. Co. v. McClendon*, 269 Ala. 456, 114 So.2d 153, stated:

"It does not enlarge or modify in any respect the substantial liability created by the contract of insurance, it merely enables the person suffering the initial damage, out of which grows the loss to the insured, to acquire a lien against the loss and the right to damages or indemnity arising under the policy, and to enforce it in his own name."

---

**2.** It is apparent from the dissenting opinion that the public policy question was considered.

**3.** To so apply the latter statute as here contended might well subject to question the validity of the time provisions of policies as to the giving of notice and the filing of proof of loss.

In *Employers Ins. Co. of Alabama v. Johnston*, 238 Ala. 26, 189 So.2d 58 (1939), the court stated that it had held along with generally accepted view that Sections 27–23–1 & 2

> "did not extend to plaintiff a primary claim as a contractee of such a policy of insurance with a power to sue to enforce it independent of the status created between the assured, against whom judgment had been rendered, and his insurance carrier. That plaintiff's status was derivative and depended upon the liability of the insurer to the assured under the contract, provided that after the accident and injury they cannot cancel or annul the contract, but the cooperation clause, supra, was not affected, and by its breach, not waived, the liability of the insurer to the assured and through him to the injured party was forfeited and lost."

In *Link & Co., supra*, the court recognized the general rule as last stated, but departed from it under the facts of that case and the provisions of the policy involved.

In those cases where applicable, the rider prohibiting cancellation, change or lapse would supersede the general cancellation provision set out in footnote one as to the mortgagee and the Secretary of the Department of Housing and Urban Development. Compliance with the notice provision was required to terminate their interest. The policy terminated on May 11, 1974 and was not renewed by the insured.[4] The policy does not provide for notice to the insured of termination of the policy for non-payment in that case. The general cancellation provision is applicable for non-payment of premiums as to the insured only when a policy has been issued and is outstanding and for which credit has been extended. The insurer did not have to cancel a policy that has lapsed by its very terms and was not outstanding.

Plaintiffs contend that the failure to give notice to the mortgagee and the Secretary of the lapse of the policy was for their benefit. That was the contention made by the insured in *Gregory v. Travelers Indemnity Company*, 51 Ala.App. 597, 288 So.2d 139 (1973), where in fact notice was given to the mortgagee and where the court held:

> "Even though the appellee was not required by the terms of the policy to give notice of the termination to the insured, it was required to give notice to Security Mutual as mortgagee and did so. *However, such requirement to give notice to the mortgagee could not benefit the insured.*" [Emphasis supplied]

> \*    \*    \*    \*    \*    \*

> ..."in the case at bar, the appellee owed different obligations to appellant and Security Mutual. In the one instance, it owned no duty to notify the insured mortgagor that the policy had lapsed for non-payment of premium, but in the other instance there was a duty to notify the listed mortgagee of the approaching cancellation of the policy. In the latter instance notice was given, in the former it was not."

> \*    \*    \*    \*    \*    \*

> "Appellant also appears to say that the notice of cancellation sent to Security Mutual would also extend the date of the policy as it applied to her, but the answer to that, as appears from evidence, is that Security Mutual was in the business of lending money and wanted to be assured that should it finance the purchase of the vehicle its interest would be protected by collision insurance. The receipt of a copy

---

4. Albert C. James, of the firm of James & Hackworth, testified by deposition with respect to the termination as follows:

   "A. The policy that I had gotten was for the year May 11, '73 through May 11, '74. The suit papers were served after that, May 11, '74."..."Q. In other words, what they were doing is, they were trying to get you to renew, were they not? A. Yes. That is the normal thing, every year that the policy lapsed, expired, and you went through the same procedure every year." ..."Q. It is your recollection every year they would tell you about it and try to get you to renew it, and you did renew it? A. Right. Q. Many years, didn't you? A. Yes, right. Q. But you did not renew this '74 policy? A. No, sir." ..."Q. The first notice that you ever gave to CNA about a possible claim being made against you, or a claim, was those suit papers, was it not? A. Yes."

of the policy and notice of cancellation of it was in keeping with its primary interest and that was the protection of its loan of money."

\*    \*    \*    \*    \*    \*

"The undisputed evidence was that the appellant did not renew her policy of insurance within the time limit set out therein; consequently, there was no coverage on the date of her loss."

The record clearly shows without dispute that James & Hackworth did not renew their policy. Consequently, neither they, nor Rives Construction Company, can claim benefit of the rider prohibiting cancellation change or lapse as to the mortgagee and Secretary. See also, *Birmingham Fire Insurance Company of Pa. v. Allstate Insurance Company*, 349 So.2d 646 (Fla. App.1977).

Confronted with, and relying upon, the authorities referred to, the court is of the opinion that the defendant's motion for summary judgment should be granted, and that of the plaintiffs' should be overruled.