Insurer sought a declaratory judgment to determine its obligation to defend a pending action. This appeal ensued as a result of judgment in favor of the insurer. We reverse and remand.
This appeal necessitates a reexamination of an earlier decision of this Court, viz., Utica Mutual Ins. Co. v. Tuscaloosa MotorCo., Inc., 295 Ala. 309, 329 So.2d 82 (1976). That case concerned a liability insurance policy whose insuring clause required the company to pay "all sums which the insured shall become legally obligated to pay . . . caused by an occurrence." An "occurrence" was defined in the policy as "an accident . . . which results,during the policy period, in bodily injury or property damage." (Emphasis added.) In Utica, which originated as a consolidated declaratory judgment action brought by the insurer, the trial court declared that the policy language was ambiguous (for reasons we need not discuss) and construed the policy in favor of the insured. On appeal of Utica, a majority of this Court reversed the trial court. Three of the justices, finding no ambiguity, voted to enforce the contract as written, thus finding that "coverage is afforded only when bodily injury, or damage to or loss of property is suffered during the policy period irrespective of when the negligent act was performed which later resulted in such bodily injury, or damage to or loss of property." Two justices concurred in the result. That majority, however, obiter dictum, wrote disapprovingly of such policy language, suggesting that its harshness resulted in unfairness, and invited the Commissioner of Insurance to scrutinize policies containing that language with the view of possible withdrawal of approval of such policy forms. The majority's disapprobation was made additionally manifest by the concluding paragraph of its opinion:
 "If, in the future, the Commissioner of Insurance because of limitations of manpower and time is not able to cause filed forms of policies of insurance to be scrutinized under the standards set out in § 322 and in particular § 322 (5) [now § 27-14-9 (5)] this court may be compelled to declare the public policy of this State per the views expressed by Justice Jones and Shores in their dissent in this case." 295 Ala. at 314, 329 So.2d 82.
Four of the justices dissented and, of those, two joined in a dissenting opinion. That opinion concurred in the majority's position that no ambiguity existed in the policy. The two justices who joined in the written dissent would have affirmed the decision of the trial court on the ground, further discussed below, of an incongruity which resulted "in an anomaly which the public policy of this state cannot sanction."
Essentially the same legal problem as existed in Utica is once again presented to this Court.
The present case was submitted to the trial court upon a stipulation which disclosed that on March 21, 1972, Truck Insurance Exchange (Truck) issued a general liability insurance policy to Wixom Brothers Company (Wixom) which was effective until it was cancelled sometime in October 1974. Jack Dunn, one of the defendants in *Page 1233 
this action, was injured on May 4, 1978, while operating a motorcycle which had attached to it a fairing (a type of windshield) which was designed, manufactured, marketed and distributed by Wixom on June 19, 1974. Jack Dunn and his wife, Carolyn Faye Dunn, later brought suit against Wixom and others on account on this accident. That suit alleged that Jack Dunn was injured while riding the motorcycle, and that he was injured as the proximate result of the negligence of Wixom and others in designing, inspecting, testing, etc., the motorcycle and the fairing. This declaratory judgment action was brought by Truck to determine its obligation to defend that pending action.
As the trial court perceived it, the issue was whether Dunn's injury on May 4, 1978, which occurred three years and seven months after the policy had been cancelled, was within the coverage of the insurance policy. That policy, which provides general liability coverage, including products hazard and completed operations hazard insurance, contains an insuring clause agreeing:
 "To pay all damages which the insured becomes legally obligated to pay because of
". . .
"(C) Bodily injury to any person, and
". . .
 "to which this insurance applies, caused by an occurrence."
An "occurrence" is defined in the policy:
 "(m) `Occurrence' means an event, or series of events . . . proximately caused by an act or omission of the insured, regardless of the number of persons, vehicles or objects affected by such act or omission which results, during the policy period, in bodily injury . . . neither expected or intended from the standpoint of the insured."
The trial court found that the policy language was clear and unambiguous, meaning that coverage was afforded "only when bodily injury is suffered during the policy period without regard to when the negligent or wrongful act was performed which later resulted in such bodily injury." The trial court found additional support for its position in the policy language of the "Limits of Liability" provision:
 "The limits of bodily injury liability . . . are the total limits of the company's liability for all damages arising out of the Products Hazard and Completed Operation Hazard during the twelve month period beginning with the effective date of such coverage provided the bodily injury occurs while the policy is in force."
Having found the policy language clear, the court decided that California law controlled the merits inasmuch as the insurance contract was prepared, signed and issued in California. The trial court analyzed several California decisions which it found to favor the insurance company's position. The trial court also observed, however, that Utica, supra, required the same result.
On this appeal Truck maintains that California law controls the issue. Wixom does not disagree with that position insofar as any issue of clarity or ambiguity in policy terms is concerned. Wixom does insist, however, that the question of public policy, i.e., whether such language excluding liability when the incident giving rise to that liability occurred after the policy's period of coverage is enforceable, is one for the court to decide notwithstanding California's decisions on themeaning of the policy language. We agree with Wixom's position. The public policy of the forum state may prevent enforcement of a contract valid at the place where made. See generally 16 Am.Jur.2d Conflict of Laws § 19 at 42 (1979).
The insuring clause in this policy provides that the company is to pay the damages "which the insured becomes legally obligated to pay . . . because of . . . bodily injury . . . caused by an occurrence." This language was considered inUtica, in which the dissent aptly observed that the insured "could not be `legally obligated to pay as damages' any amount to either [claimant] until it breached some duty resulting in injury to them." And the dissent continued by noting that "[a] cause of action did not accrue in favor of either [claimant] against *Page 1234 
[the insured] until each was actually injured. . . . A right of action against the insured did not accrue until the injury actually occurred. [Citation omitted.] Therefore, the insured could not become legally obligated to pay before that time."
The dissenting opinion continues:
 "By virtue of the definition of `occurrence,' Utica restricts its liability to `. . . an accident . . . which results, during the policy period, in bodily injury or property damage. . . .' While Tuscaloosa Motor Company's liability, by operation of law, runs to an injured party from the moment of injury to the running of the statute of limitations, the liability of Utica to Tuscaloosa Motor Company extends only to injury-producing accidents occurring within the policy period.
 "Thus, by contract Utica has limited its liability to its insured to a definable time limit unrelated to the length of exposure which the law imposes on Tuscaloosa Motor Company.
". . .
 "Utica, therefore, stands absolved of the very liability to which its insured is exposed by operation of law notwithstanding the fact that the policy commits Utica to `pay on behalf of the insured all sums which the insured shall become legally obligated to pay. . . .'
 "Undoubtedly, it is this anomaly which prompted the trial court to conclude that the policy provisions created an ambiguity which it resolved in favor of the insured. We agree with Utica, however, that the policy provisions are clear as to their meaning and intent. A reading of the language of the policy leaves no uncertainty that Utica by contract has limited its risk of loss by definition of the term `occurrence' to the extent set out above. It is not on the basis of ambiguity that we would affirm the trial court, but rather because the incongruity results in an anomaly which the public policy of this State cannot sanction.
 "The provisions of this policy, although unambiguous, leave Tuscaloosa Motor Company without a remedy against Utica for the very liability it sought insurance to protect against. Likewise, it leaves the plaintiffs (Johnson and Nuchols) without the protection which Tuscaloosa Motor Company sought to provide through its insurance contract with Utica. This result offends the public policy of this State." (Footnote omitted.)
The conclusions quoted above perforce apply to this situation and require no further amplification, except perhaps to quote additionally from the language of the dissenting opinion inUtica, 295 Ala. at 315, 329 So.2d 82:
 "While the injury-producing accident must result directly from the culpable conduct of the insured, ordinarily such subsequent consequences lie beyond the insured's immediate control as to time and place of occurrence. Thus, public policy favors contracts of insurance in such cases which [fix] the coverage concurrent with the time of the insured's culpable conduct — making the insured's and the insurer's legal obligations coextensive."
For the reasons stated, the public interest in this state would be injuriously affected in such a substantial manner by the enforcement of the coverage restriction exemplified by this insurance policy; the private right to contract in that manner, therefore, must yield to the public interest opposing such a restriction. Maddox v. Fuller, 233 Ala. 662, 173 So. 12 (1937). And the Utica decision should be no bar to the application of that principle to this case, even though this insurance policy was both issued and cancelled before the Utica decision was announced. That dictum does not bind us as precedent. Wilkinsonv. Rowe, 266 Ala. 675, 98 So.2d 435 (1957). Accordingly, we reverse the judgment of the trial court and remand this case to that court for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
JONES, ALMON, SHORES and EMBRY, JJ., concur.
TORBERT, C.J., and MADDOX, FAULKNER and ADAMS, JJ., dissent. *Page 1235