446 So.2d 1021 (1984)
UNITED STATES FIDELITY & GUARANTY COMPANY
v.
WARWICK DEVELOPMENT COMPANY, INC.
WARWICK DEVELOPMENT COMPANY, INC.
v.
Jerry G. ADAMS and Nancy B. Adams.
Jerry G. ADAMS and Nancy B. Adams
v.
WARWICK DEVELOPMENT COMPANY, INC.
81-686, 81-697 and 81-707.
Supreme Court of Alabama.
February 10, 1984.
*1022 Foster Etheredge and J. Mark Hart of Spain, Gillon, Riley, Tate & Etheredge, Birmingham, for appellants.
W.L. Longshore, Jr., of Longshore & Longshore, Birmingham, for appellee/cross-appellant Warwick Development Co., Inc.
Nancy B. Adams and Jerry G. Adams, pro se.

ON REHEARING EX MERO MOTU
PER CURIAM.
The original opinion in this case, dated October 7, 1983, is withdrawn, and the following opinion is substituted therefor:
These appeals are the result of the trial court's award of money damages to the plaintiffs, and the trial court's finding that United States Fidelity & Guaranty Company (USF & G) was bound under the policy of insurance to Warwick Development Company, Inc. (Warwick). We affirm in part, reverse in part, and render.

FACTS
The plaintiffs, Jerry G. Adams and Nancy B. Adams (Adamses), were purchasers of a home in Grayson Valley Estates, Highland Sector, in Jefferson County. The contract for purchase was signed on or about March 17, 1980, and the sale closed on June 24, 1980. The Adamses alleged defects throughout the structure of the residence and some nineteen are listed in the complaint. The Adamses filed suit against Warwick, the contractor/seller, and National Mortgage Company (National), the holder of the first mortgage, alleging unworkmanlike construction and misrepresentations of material facts by Warwick. Plaintiffs brought this action in the Equity Division of the Circuit Court of Jefferson County seeking rescission and cancellation of the sale and mortgage, and money damages. Defendant, Warwick, filed a third-party complaint against USF & G and Northern Assurance Company of America (Northern Assurance), claiming both were liable under comprehensive general liability policies (CGL) issued to Warwick. Both companies had refused to defend Warwick in this action and denied coverage under the policies. Warwick sought recovery *1023 from the insurance companies for any sums adjudged against Warwick in favor of the Adamses, plus reasonable attorney's fees.
On the day of the trial, National, the holder of the mortgage, was dismissed upon stipulation of the parties, and Northern Assurance's motion for summary judgment was granted, resulting in its dismissal. USF & G's motion for summary judgment was denied, based on Cotton States Mutual Ins. Co. v. Norrell Heating & Air Conditioning Co., Inc., 370 So.2d 270 (Ala. 1979).
The trial proceeded and at the close of the evidence the Adamses, pursuant to a former ruling by the trial judge, elected the remedy of rescission rather than damages for breach of contract. The trial court expressly found that under the evidence presented the Adamses were not entitled to rescission of the contract. Notwithstanding the election of remedies by plaintiffs, the trial court found within the complaint a prayer for damages and a prayer for general relief. Citing the Alabama Rules of Civil Procedure, Rule 15(b) and (c), and Tilley's Alabama Equity Pleading and Practice, Section 168, the trial court awarded the Adamses $4,600.00 based on the following principle:
"`If, under the averments, Complainant is entitled to relief of the character prayed, the Court under the general prayer will mold the relief to meet the equities as they appear.' (See Dees v. Dees, [285 Ala. 597], 235 So.2d [236] at page 237 [1970]; Wood v. Cantrell, [224 Ala. 294], 140 So. 345 [1932]; Cox v. Cox, [267 Ala. 372], 102 So.2d 23 [1958]; Crawford v. Crawford, 349 So.2d 65 [Ala.Civ.App.1977])."
With regard to the third-party complaint of Warwick against USF & G, the trial court found that USF & G was bound under its policy of insurance to Warwick and awarded Warwick the amount of the judgment ($4,600.00), plus a reasonable attorney's fee of $6,500.00.
USF & G appeals from the denial of its motion for summary judgment and from the judgment entered for Warwick on the third-party complaint. Additionally, Warwick cross-appeals from the money judgment in favor of the Adamses and the Adamses cross-appeal from the judgment. Three issues were presented for review which will be addressed separately.

I.
The first issue is whether USF & G's policy provided coverage for alleged faulty workmanship and noncomplying materials in the construction of plaintiff's residence when the alleged damage was confined to the residence itself. USF & G contends that the policy affords no coverage because (1) no insurable loss occurred within the policy period and (2) damages to the work of the insured attributable to faulty workmanship are expressly excluded from coverage. After a review of the record and the policy involved, we conclude that the trial court incorrectly held that USF & G was bound under its policy of insurance to Warwick. In our view, there was no "occurrence" within the definition of "occurrence" found in the pertinent policy provisions. The policy clearly states that the company will pay damages for: "A. bodily injury or B. property damage to which this insurance applies caused by an occurrence." The USF & G policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured." For a contrary holding under circumstances amounting to "an occurrence," see Moss v. Champion Ins. Co., 442 So.2d 26 (Ala.1983).
We cannot agree with the argument set forth by the Adamses that "a reliance upon the misrepresentations" made by Warwick constitutes an occurrence within the language of the policy. Further, we agree with USF & G that if a misrepresentation were an "occurrence" within the definition of the policy then "any misrepresentations in this case would not be an `occurrence' which caused `property damage' as *1024 required to support liability under the policy." "Property damage" is defined in the policy as follows:
"(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or
"(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."
There was no evidence in this case that a misrepresentation by Warwick caused physical injury to or destruction of tangible property. For property damage to come under the coverage of USF & G, there must have been an "occurrence" within the definition of the policy. A majority of courts have held that in order to have liability under the terms of such a policy the "occurrence" must arise during the policy period, for it is the insurance that is in force at the time of the property damage that is applicable rather than insurance that was in force when the work was performed. See, e.g., Deodato v. Hartford Ins. Co., 143 N.J.Super. 396, 363 A.2d 361 (1976); Singsaas v. Diederich, 307 Minn. 153, 238 N.W.2d 878 (1976); Oceanonics, Inc. v. Petroleum Distributing Co., 280 So.2d 874 (La.Ct.App.1973), aff'd, 292 So.2d 190 (La.1974). USF & G also asserts, and we agree, that "as a general rule the time of an `occurrence' of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time the complaining party was actually damaged." Muller Fuel Oil Co. v. Insurance Company of North America, 95 N.J.Super. 564, 232 A.2d 168 (1967), quoted in Deodato v. Hartford Ins. Co., 363 A.2d at 365. See also Annot., 57 A.L.R.2d 1385. By adopting this view, we necessarily overrule Wixom Brothers Co. v. Truck Insurance Exchange, 435 So.2d 1231 (Ala.1983).
The trial court denied USF & G's motion for summary judgment on the basis of Cotton States, supra. Warwick argued and reiterates on appeal that under Cotton States certain exclusions found within the policy provisions were ambiguous when read in light of each other, and that the ambiguity should be resolved in favor of the insured. Because we find that the damages claimed were not within the USF & G policy coverage, we need not reach the question of ambiguity as to the policy exclusions.

II.
The next issue presented is whether the plaintiff's "election" of the relief of rescission at the close of the evidence barred the trial court's award of money damages. While it is true, as urged by Warwick, that a plaintiff may not both rescind a contract and receive money damages, this argument overlooks the fact that the Adamses were not requesting both forms of recovery, but rather were pleading and pursuing their claims for relief in the alternative, as expressly allowed by the Alabama Rules of Civil Procedure. ARCP 8(a).
Rule 8 is identical in relevant aspects to the corresponding Federal Rule of Civil Procedure. The federal courts have consistently upheld the right of a plaintiff to try his case on alternate theories of relief and the "plaintiff cannot be required to elect upon which theory to proceed." Breeding v. Massey, 378 F.2d 171, 178 (8th Cir.1967); Campbell v. Barnett, 351 F.2d 342, 344 (10th Cir.1965); Pulliam v. Gulf Lumber Co., 312 F.2d 505, 507 (5th Cir. 1963); Herlihy Mid-Continent Co. v. Bay City, 293 F.2d 383, 385 (6th Cir.1961).
Breeding v. Massey, supra, involved an appeal by the Defendant/Appellant, asserting that the claims of negligent entrustment and respondeat superior were alternative grounds for liability, and that recovery for the former could only be made when respondeat superior liability did not exist. The court found such a position unsupported by authority or logic, stating, "A party may ... state as many separate claims or defenses as he has regardless of consistency and whether based on legal, *1025 equitable or maritime grounds." 378 F.2d at 178.
Where the plaintiff was required to elect between two inconsistent causes of action prior to submitting his case to the jury, the Third Circuit found reversible error. German v. Carnegie-Illinois Steel Corporation, 156 F.2d 977, 979 (3rd Cir.1946). In reversing the trial court, the panel determined that the plaintiff was entitled to have the jury pass on both causes of action and if his proof sustained either, or both, he could recover damages. Id.
The Ninth Circuit, in E.H. Boly & Son, Inc. v. Schneider, 525 F.2d 20 (9th Cir. 1975), affirmed the trial court's determination that while damages and restitution cannot be requested concurrently in a complaint, a plaintiff may claim these remedies as alternatives, leaving the ultimate election for the court. 525 F.2d 20, 23, n. 3; Bernstein v. United States, 256 F.2d 697, 706 (10th Cir.1958), cert. dismissed, 358 U.S. 924, 79 S.Ct. 296, 3 L.Ed.2d 298 (1959).
At the beginning of trial in the instant case, the trial judge in effect granted the Defendant's motion to require election by saying to Plaintiffs' lawyer:
"You do have to elect, but that election need not be made until all the evidence is before the Court.... But the election must be made before the case rests."
The trial judge was in error in requiring the Adamses to elect under which theory they would proceed. The case had been completely tried, except for closing arguments, at the time of the "election." Warwick was not prejudiced by the Plaintiffs' presentation of evidence in support of either, or both, theories. See Senter v. B.F. Goodrich Company, 127 F.Supp. 705 (D.Colo.1954).
Had the judge found in favor of Warwick on the basis that he was not convinced by the evidence of the breach of the contract, he would have mooted his error. Having found breach of contract, however, he was then faced with the task of awarding the appropriate relief. Because he was of the opinion that rescission was inappropriate under the circumstances, he corrected his own error, and, correctly in our opinion, found evidence to support an award of damages. "If an actionable wrong has taken place, recovery is to be granted regardless of theory and relief must not be denied through the vehicle of a forced election." Senter, supra, at 708.
We need not rely solely on federal cases. In National Security Fire and Casualty Co. v. Vintson, 414 So.2d 49 (Ala.1982), this Court held:
"[W]here the plaintiff claims misrepresentation in the inception of the contract, the plaintiff has the right to present his case to the jury under either a breach of contract theory or the tort of misrepresentation or both because the same facts could support a finding that the contract did exist...."
"The plaintiff may then elect to submit either theory, or both, to the factfinder, ARCP 8(a), with the proper instructions by the court to the jury that it must determine whether one, or both, of these theories are supported by the evidence, if at all. If the jury returns a verdict for the plaintiff, it may only award damages under one of the theories, not both. However, the choice rests with the jury. See, USF & G v. McKinnon, 356 So.2d 600 (Ala.1978)." (Emphasis supplied.) 414 So.2d at 51.
See Mid-State Homes, Inc. v. Johnson, 294 Ala. 59, 311 So.2d 312 (1975), for an example of multiple claims where the claimant may be entitled to concurrent recoveries. See, also, Alabama Football, Inc. v. Stabler, 295 Ala. 551, 319 So.2d 678 (1975). For a case dealing with certain procedural aspects and review standards in a multiclaim suit, see Aspinwall v. Gowens, 405 So.2d 134 (Ala.1981).
Our recent cases interpreting ARCP 8(a) clearly evidence an erosion of the former practice of requiring the plaintiff's lawyer to elect as between alternative remedies or theories of recovery. While these Plaintiffs were not entitled to concurrent recoveries on inconsistent theories (rescission and damages for the breach), we find no *1026 reason in logic or precedent to persuade us to reverse the trial court for rejecting rescission and awarding damages.

III.
Finally, we consider the Adamses' contention that the court's award of money damages should be increased. We have carefully reviewed the record in this case; and, while the evidence proffered by the Adamses would support a considerably higher award, essentially all of this evidence of defective materials and substandard workmanship was sharply contradicted. We are not inclined, under our review of the evidence of record, to revise the award upward.
As to the appeal by USF & G (Case No. 81-686), the judgment is reversed and the cause is rendered. As to the appeal by Warwick (Case No. 81-697), the judgment is affirmed. As to the appeal by the Adamses (Case No. 81-707), the judgment is affirmed.
OPINION SUBSTITUTED ON REHEARING EX MERO MOTU; AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
FAULKNER, ALMON and ADAMS, JJ., concur.
TORBERT, C.J., and MADDOX, J., concur as to Part I; dissent as to Part III; and dissent as to Part II, joining separate opinion of BEATTY, J., as to Part II.
JONES, J., concurs as to Parts II and III; and concurs specially as to Part I, with a separate opinion.
SHORES, J., concurs as to Part III; concurs in the result as to Part II; and concurs specially as to Part I, with a separate opinion.
EMBRY, J., concurs as to Part III; concurs specially as to Part I, joining JONES and SHORES, JJ., in their separate opinion; and concurs specially as to Part II, with separate opinion.
BEATTY, J., dissents as to Part III; and, with separate opinion, concurs specially as to Part I and dissents as to Part II.
JONES and SHORES, Justices (concurring specially).
Because the Court in Part I of this opinion overrules Wixom Brothers Company v. Truck Ins. Exchange, 435 So.2d 1231 (Ala.1983), and returns to the view expressed in Utica Mutual Insurance Co. v. Tuscaloosa Motor Co., Inc., 295 Ala. 309, 329 So.2d 82 (1976), we write separately, since Wixom purported to adopt the position which we stated in a special opinion in Utica.
The facts of the instant case do not present the problem which concerned us in Utica. At the time of the alleged act or omission of the insured, USF & G's liability policy was in effect, but it had expired at the time of the accrual of the cause of action, i.e., at the time the damage occurred. In Utica and Wixom, the inquiry was whose coverage applies where there are successive policies with different carriers and the alleged act or omission occurs during the policy period with one insurer and the cause of action accrues during the policy period of a successor insurer. In this case, the question arises in the context of a single insurer whose coverage expired between these two dates. In any event, the question is the same: Will the courts give effect to the literal and unambiguous wording of the policy definition of "occurrence"?
Our dissent in Utica, which formed the basis for Wixom, expressed our apprehension concerning the unregulated discretion of the insurer to alter this definition at will and thus manipulate a hiatus in coverage without a corresponding hiatus in premium obligation. In other words, we were concerned that successive policies, by varying definitions of "occurrence," could leave an insured, who thought he had continuing coverage, without protection under either policy.
In retrospect and in view of the consistency of the policy definitions of "occurrence," *1027 we now realize that we should have concurred in the result of Utica (rather than dissenting), pointing out the public policy consideration that would be invoked only where the coverage issue is presented in the context of inconsistent definitions. Thus, the erroneous result in Wixom would have been avoided. At any rate, absent a showing of conflicting definitions, by its unanimous vote as to Part I in the instant case, the Court is of one mind in the view that a policy restricting coverage to bodily injury or property damage occurring during the policy period will be given effect according to its plain and unambiguous language.
EMBRY, J., concurs.
EMBRY, Justice (concurring in Parts I and III, and concurring specially in Part II):
Because the record reveals that the plaintiffs exercised the election in favor of rescission pursuant to an adverse ruling of the trial court, rather than voluntarily, I agree that, under the circumstances of this case, the plaintiffs should not have been required to elect as between alternative theories of recovery, and that the trial court properly exercised its factfinding prerogative in awarding damages for breach of contract. United States Fidelity & Guaranty Co. v. McKinnon, 356 So.2d 600 (Ala.1978). Furthermore, it is worthy of note that, under appropriate circumstances, a claimant may be entitled to concurrent recoveries for breach of contract and for the tort of fraud. Mid-State Homes, Inc. v. Johnson, 294 Ala. 59, 311 So.2d 312 (1975).
BEATTY, Justice (concurring specially in Part I and dissenting in Part II):
I concur specially in that part of the majority's opinion dealing with the policy coverage and dissent as to that part dealing with election of remedies.

I. POLICY COVERAGE.
The majority in Part I overrules Wixom Brothers Co. v. Truck Ins. Exchange, 435 So.2d 1231 (Ala.1983), because the Court now perceives that the interpretation of the policy situation was not as I understood it in Wixom. I agree with the majority in this case that USF & G was not liable under its policy of insurance to Warwick because the "reliance upon misrepresentations" claimed by the Adamses did not constitute an "occurrence" within the definition of the policy, nor did any misrepresentations cause "property damage" which would have supported liability under the policy. It was entirely possible for the result in USF & G to have been determined without reaching the issue presented in Wixom. Having gone into it, however, a majority of the Court now takes the position that the difficulty apprehended in Wixom does not exist. Because of this, it is helpful to juxtapose Wixom and Utica Mutual Ins. Co. v. Tuscaloosa Motor Co., 295 Ala. 309, 329 So.2d 82 (1976). Wixom revisited Utica, and the dissent in Utica was the basis for the majority opinion in Wixom.
Those two cases can be outlined as follows:
UTICA WIXOM
(1) A declaratory judgment action was (1) A declaratory judgment action was
filed to determine if the prior insurance brought to determine if Truck Insurance
carrier, Utica, was required to defend a Exchange was required to defend a
pending claim. pending action.
(2) The Utica policy was in effect at the (2) The policy issued by Truck Insurance
time the alleged "negligent repairs" in Exchange was in effect when the "negligent
question were performed, but the bodily or wrongful act was performed" but
injury or property damage occurred after the bodily injury or property damage
the expiration of that policy and during the occurred after the expiration of that policy
period of coverage of a subsequent policy. and during the period of coverage of a
 subsequent policy.
*1028
(3) The insuring clause in that policy reads: (3) The insurer, in the insuring clause in
 that policy, agreed:
 "The company will pay on behalf of the "to pay all damages which the insured
insured all sums which the insured shall becomes legally obligated to pay because of
become legally obligated to pay as damages
because of "...
 "G. bodily injury or "(C) Bodily injury to any person, and
 "H. property damage "...
"to which this insurance applies, caused by "to which this insurance applies, caused by
an occurrence and arising out of garage an occurrence."
operations...."
An "occurrence" was defined in the policy An "occurrence" was defined in the policy
as: as:
 "... an accident ... which results, "... an event, or series of events ...
during the policy period, in bodily injury or proximately caused by an act or omission of
property damage neither expected nor the insured, regardless of the number of
intended from the standpoint of the persons, vehicles or objects affected by
insured;" such act or omission which results, during
 the policy period, in bodily injury ...
 neither expected nor intended from the
 standpoint of the insured."
(4) This Court held that: (4) This Court held that:
 "The clear meaning of the policy "[T]he public interest in this state would be
language is that coverage is afforded only injuriously affected in such a substantial
when bodily injury, or damage to or loss of manner by the enforcement of the
property is suffered during the policy coverage restriction exemplified by this
period irrespective of when the negligent insurance policy; the private right to
act was performed which later resulted in contract in that manner, therefore, must
such bodily injury, or damage to or loss of yield to the public interest opposing such a
property. ... The determinative factor restriction. ..."
is not when the `accident' (negligent act)
took place, rather it is whether or not the
bodily injury, or damage to or loss of
property happened during the policy
period."
The dissenting view in Utica and the basis for the majority holding in Wixom expressed the concern that insurers could "create a hiatus of coverage with no breach in premium obligations" by restricting language contained in the policies and by varying the definition of the term "occurrence" in successive policies. The dissent stated and the majority recognized in Utica that public policy favors contracts of insurance which fix the coverage concurrent with the time of the insured's culpable conduct making the insured's and the insurer's legal obligations coextensive.
The public policy concern recognized in Utica was adopted in Wixom. A majority of the Court in Wixom agreed that the language restricting coverage to bodily injury "which results during the policy period" was not proper, but the Court divided on whether to immediately disapprove or prospectively disapprove coverage. The dissent in Wixom did not address itself to the issue of whether or not Truck Insurance Exchange was responsible for coverage under the language of the policy, but rather focused on the fact that the policy involved in Wixom was written prior to the Utica decision, and the dissenters stated *1029 that "if the policy had been written after Utica, and after the Commissioner of Insurance had had an opportunity to act, then a different result could and should be reached." 435 So.2d at 1235.
The present case confronts the following:
(1) A third-party complaint was filed by defendant Warwick against USF & G and Northern Assurance claiming both insurers were liable under policies issued to Warwick for any sums adjudged against Warwick. Both insurers had refused to defend the claim against Warwick and denied coverage. Northern Assurance was dismissed from the action and the trial court held that USF & G was liable under its policy to Warwick. (See Part I of the majority opinion for the insuring clause.)
(2) This Court reverses the trial court, and I agree that there was no coverage afforded in this case within the definition of the policy. The majority goes further, overruling Wixom, and holds that "in order to have liability under the terms of such a policy the `occurrence' must arise during the policy period" and that "the time of an `occurrence' of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time the complaining party was actually damaged."
Wixom is not directly applicable to the case at hand, and I do not think it should be overruled. In addition, the majority in USF & G, by now reaffirming Utica and overruling Wixom, fails to take into consideration the public policy concern which was recognized in Utica and addressed in Wixom. As it now stands, as long as the restrictive language in the insuring clause is clear and unambiguous it will be upheld. Through the policy language and the private right to contract, an insurer can absolve itself of liability which falls beyond the specified policy period. In other words, the insurer can write its policy and limit its liability to a definable time limit unrelated to the length of exposure which the law places on the insured. As a result, the concern expressed in Utica that insurers could "create a hiatus of coverage" and leave a plaintiff without the protection which he sought to provide by obtaining an insurance contract, remains.

II. ELECTION OF REMEDIES.
From a reading of the majority opinion, it is clear that the majority in Part II does not follow its own statement of the legal principle to be applied under these facts with regard to the election of remedies.
The record clearly shows that the lawyers who tried this case, and the trial judge himself, recognized that this was a situation in which plaintiffs would be required to ultimately elect their remedy; that is, after all the evidence was presented. The case was tried on that basis.
Plaintiffs sought to recover for a breach of warranty allegedly contained in their contract of purchase of a residence and for rescission of their contract as well. They did not claim fraud in the inception, which would have nullified the contract, National Security Fire & Casualty Co. v. Vintson, 414 So.2d 49 (Ala.1982), but they adhered to the contract by insisting on the warranty. The trial court held that they could not recover under both theories, but, interestingly enough, also held that since plaintiffs had failed to prove a case for rescission the court would award damages under the contract AFTER THE PLAINTIFFS HAD EXPRESSLY STATED THEY WANTED RESCISSION AND THUS HAD MADE THEIR ELECTION BETWEEN THESE INCONSISTENT REMEDIES.
The majority places much of its reliance upon Rule 8(a), Alabama Rules of Civil Procedure. I cannot agree that Rule 8(a) solves the problem. This rule clearly refers to alternative remedies pleaded and not to recovery under inconsistent theories as we have here. This bootstrapping also includes reliance upon Vintson, supra, and Mid-State Homes, Inc. v. Johnson, 294 Ala. 59, 311 So.2d 312 (1975). Even a casual reading of these cases clearly shows that they were not meant to eradicate the necessity for an election between inconsistent remedies. The opinion in Vintson should be viewed only in the limited sense as *1030 spelled out by the author and only applies to the narrow situation presented by the facts of that case. Further, in citing Gulf Oil Corporation v. Spriggs Enterprises, Inc., 388 So.2d 518 (Ala.1980), which clearly states "the plaintiff must make an election at the latest before the case goes to the jury as to which of its inconsistent theories it elects to proceed on," this Court in Vintson pointed out that we were not departing from the well-established principle requiring an election of inconsistent theories of recovery.
According to the majority opinion, I suppose the law now is that Rule 8(a) allows inconsistent recoveries. It is at least inferable that the restrictions of Spriggs and Vintson have been annulled.