The issue in this case is whether under an application of Pennsylvania law, the trial court erred in concluding, under the facts of this case, that a serviceman stationed in Alabama was a "resident" of his parents' household in Pennsylvania within the meaning of his parents' automobile insurance policy.
In this declaratory judgment action, the issue before the trial court was whether Donegal Mutual Insurance Company of Marietta, Pennsylvania ("Donegal"), under its automobile insurance policy with Stephen McConnell's parents, Walter and Octavia McConnell, was obligated to provide Stephen with basic first-party medical expense coverage and underinsured motorist coverage for injuries that he sustained in an automobile accident in Tennessee.[1] *Page 202 
 FACTS
On January 1, 1986, Stephen McConnell, who was stationed for military service at Redstone Arsenal in Huntsville, Alabama, and his parents, Walter and Octavia McConnell, entered a Buick dealership in Evansburg, Pennsylvania, and Walter purchased a car for his son, Stephen. After purchasing the car, Walter called his insurance agent, and told him to add Stephen and the new car to the automobile insurance policy he and his wife held as named insureds. The addition to the policy took effect the next day.
On July 13, 1986, Stephen McConnell and David King, a military friend who was also stationed at Redstone Arsenal, were involved in an automobile accident with another car in Tennessee. At the time of the accident, Stephen was not a passenger in his own car, but was riding with King in his car. After the accident, Stephen was transferred to Huntsville Hospital, where he stayed for treatment until August 15, 1986, and he was later transferred to a military hospital located at Maxwell Air Force Base in Montgomery, Alabama. After two or three weeks of treatment there, Stephen was released and he returned to Redstone Arsenal.
On March 3, 1987, several months after the accident, Stephen notified his father's insurance agent that he had been involved in the automobile accident. After Donegal concluded its investigation of the automobile accident, it denied Stephen's claims for basic first-party medical expense coverage and for underinsured motorist coverage, basing its denial on its assertion that Stephen did not qualify as a "covered person" under his parents' policy at the time of the accident.[2]
On July 6, 1987, Stephen and his wife, Brenda, filed a complaint for themselves and for the United States of America against King and Donegal in the Circuit Court of Madison County.[3]
In their complaint, the McConnells sought damages totaling $500,000. Apart from their negligence claim against King, the McConnells alleged that Donegal was obligated under its automobile insurance policy with Stephen's parents to provide Stephen with basic first-party medical expense coverage and underinsured motorist coverage for Stephen's automobile accident.
On August 5, 1987, Donegal filed its answer and a counterclaim in the nature of a complaint for a declaratory judgment, in which Donegal denied that it was obligated to provide Stephen with the requested coverages. In its counterclaim, Donegal requested a judgment declaring that it was not obligated to provide Stephen with the requested coverages because, it claimed, Stephen did not qualify as a "covered person" under its policy at the time of his automobile accident. Essentially, Donegal's argument for denying the claims was that Stephen was not a resident of the household of the named insureds (his parents) at the time of his accident; therefore, Donegal did not consider Stephen to be a *Page 203 family member under its policy so as to qualify as a "covered person."
On August 12, 1987, the McConnells filed an amended complaint against Donegal that added a count claiming damages for an alleged bad faith refusal to pay. Donegal answered that amended complaint on September 18, 1987, denying the McConnells' allegations that it was obligated under its policy with Stephen's parents to provide Stephen with the requested coverages, and denying that its refusal to satisfy the claims constituted a bad faith refusal on its part.
The trial court declared that, under the terms of the policy, Stephen did reside in his parents' household at the time of his automobile accident; therefore, the court held that Stephen was deemed to be a family member under Donegal's policy, which further meant that he met the stated qualification for being a "covered person." Consequently, the trial court declared in its judgment that Stephen was entitled to the coverages sought in their complaint. In support of its order, the trial court listed the following facts as reasons why it considered Stephen to be a resident of his parents' household at the time of his automobile accident:
 (1) Stephen possesses a Pennsylvania driver's license that lists his parents' home address on it;
 (2) Stephen and his father jointly hold title to Stephen's car, as is noted on the car's certificate of title;
 (3) most of Stephen's personal property remains at his parents' home;
 (4) Stephen maintains a bank account in his parents' hometown;
 (6) Stephen's military records reflect that his permanent address is at his parents' home; and
 (7) Stephen visits with his parents at their home whenever he is on leave from his duty with the Army.
On August 8, 1988, Donegal filed a motion to amend or vacate the judgment, which the trial court denied on November 8, 1988. On December 19, 1988, Donegal filed its notice of appeal to this Court.[4]
 COVERAGE
The standard of review applicable to this case is set forth in Thompson v. Hartford Acc. Indem. Co., 460 So.2d 1264
(Ala. 1984). In that case, which also involved this Court's review of a trial court's declaratory judgment, this Court stated that when a case is "tried ore tenus there is a strong presumption that the trial court's findings of fact are correct. Those findings will not be disturbed on appeal unless they are clearly erroneous or palpably wrong." Id. at 1267. However, as stated in Gaston v. Ames, 514 So.2d 877 (Ala. 1987), "when the trial court improperly applies the law to the facts, no presumption of correctness exists." Id. at 878.
The case before the trial court involved an interpretation of an automobile insurance policy that was executed in the State of Pennsylvania. Under Alabama's choice of law rule, the trial court was obligated to apply the substantive law of Pennsylvania in its interpretation of that policy. See Ex parteOwen, 437 So.2d 476, 481 (Ala. 1983); Harrison v. Insurance Co.of North America, 294 Ala. 387, 391, 318 So.2d 253, 257 (1975);Furst Thomas v. Sandlin, 208 Ala. 490, 492, 94 So. 740, 742
(1922). Nowhere in the trial court's order declaring that Stephen McConnell was a resident of his parents' household at the time of his automobile accident did that court cite Pennsylvania law to support its finding. Instead, the trial court exclusively relied upon Alabama case law to support its interpretation of that policy.
The outcome of this appeal turns on the proper construction of the term "covered *Page 204 
person," as that term is defined in Donegal's automobile insurance policy. As noted in footnote 2 to this opinion, the policy defines a "covered person" to mean: (1) the named insured as shown on the policy's declaration page,[5] (2) the spouse of a named insured if he or she resides in the same household, or (3) a family member.
The term resident is nowhere defined in Donegal's automobile insurance policy;[6] therefore, as required under Alabama's choice of law rule, this Court is obligated to look to the substantive law of Pennsylvania to construe that term. In addressing the difference between residence and domicile as those terms are defined under Pennsylvania's common law, a Pennsylvania court stated the following:
 "The Courts of this Commonwealth have historically recognized the classical definitions of the words domocile [sic] and residence. Domicile being that place where a man has his true, fixed and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning.
 "Residence being a factual place of abode. Living in a particular place, requiring only physical presence." (Emphasis added.)
Krager v. Foremost Ins. Co., 304 Pa. Super. 390, 393-94,450 A.2d 736, 737-38 (1982). In Krager, the court was construing a homeowner's policy. The court held that the plaintiff was a resident relative of the insured in that case, and was within the coverage of the homeowner's liability policy issued to his mother, where the plaintiff lived with his mother at her summer home from April to November of each year and lived at his New York mobile home for the rest of each year. The court applied the general rule that because the insurance company wrote the policy any ambiguity in the terms of the policy would be construed against it. 450 A.2d at 738. For other Pennsylvania cases discussing the distinction between "residence" and "domicile," see, Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co.,376 Pa. Super. 109, 545 A.2d 343 (1988); Boswell v. SouthCarolina Ins. Co., 353 Pa. Super. 108, 509 A.2d 358 (1986);Laird v. Laird, 279 Pa. Super. 517, 421 A.2d 319 (1980). None of these cases involved a serviceman.
Although we have been unable to find a Pennsylvania case that discusses the interpretation to be placed on the word "resident" under the facts of this case, we have found a Fifth Circuit Court of Appeals case that does interpret Pennsylvania law under similar facts. In Beck v. National Mutual Cas. Ins.Co., 429 F.2d 813 (5th Cir. 1970), the Court of Appeals had to decide whether the phrase "resident of the same household," as used in an insurance policy, included a serviceman who had been stationed away from his parents' home while in the armed services, a factual situation similar to this one. Acknowledging that at that time the State of Pennsylvania had never decided such an issue, the court stated that it was making an "educated guess" when it declared that when a serviceman "leaves his personal belongings at his former address and does not clearly manifest an intention to change his residence he is still a resident of his former home." Id.
at 817. The Beck case is consistent with cases from other jurisdictions, which generally hold that a child who is living apart from the named insured while serving in the armed forces is nevertheless a "resident" of the insured's household within the meaning of an insurance policy. See Annot., "Who is 'Resident' or 'Member' of same 'Household' or 'Family' as Named Insured, Within Liability Insurance Provision Defining Additional Insureds," 93 A.L.R.3d 420, 443 (1979). Even though the Beck case was decided prior to the date on *Page 205 
which Krager v. Foremost Ins. Co., supra, was decided, we do not believe that Krager compels us to reach a different result. In the first place, the Pennsylvania court found coverage for the additional insured in Krager, and we have found no Pennsylvania case which has criticized the Beck case and which involved a serviceman, as this case does. Although the decision of the Fifth Circuit Court of Appeals in Beck was based upon that court's "guess" of what the law was, we believe the Fifth Circuit correctly applied the law of Pennsylvania.
After carefully reviewing the record, we conclude that the trial court properly applied the law to the facts before it in its interpretation of Donegal's automobile insurance policy. In so doing, the trial court correctly declared that Stephen McConnell qualified as a "covered person" under Donegal's policy. The judgment of the trial court, therefore, is due to be, and it is hereby, affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] On February 12, 1984, the Pennsylvania Legislature enacted the Motor Vehicle Financial Responsibility Law, 75 Pa.Cons.Stat.Ann. §§ 1701-1798 (Purdon Cum.Supp. 1989-1990), which required, among other things, that every automobile insurance policy delivered or issued in Pennsylvania contain a basic $10,000 medical benefits coverage and an uninsured/underinsured motorist coverage. See specifically § 1711 and § 1731(a) of the statute.
The basic $10,000 medical benefits coverage, which Donegal refers to as basic first-party medical expense coverage in its automobile insurance policies, covers medical expenses incurred for the care, recovery, or rehabilitation of a "covered person" arising from injuries incurred from the maintenance or use of a motor vehicle. See § 1711 and § 1712(1) of the statute.Underinsured motorist coverage provides "protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." § 1731(c).
[2] Under the policy, one of the stated preconditions for receiving basic first-party medical expense coverage and underinsured motorist coverage is that the claimant must qualify as a "covered person" as defined in its policy. The pertinent definitions of the term "covered person" that formed the basis of Donegal's dispute with Stephen read as follows:
" 'Covered person' means: You or any family member.
"Throughout this policy, 'you' and 'your' refer to:
"1. The 'named insured' shown in the Declarations; and
"2. The spouse if a resident of the same household.
 " 'Family member' means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child." (Emphasis added.)
[3] Section 2651(a) of the Federal Medical Care Recovery Act,42 U.S.C. § 2651 through 2653, creates a "right" in the United States to recover from a tort-feasor the value of medical care it has furnished an injured person and provides that the government shall be subrogated to any claim of the injured person against the tort-feasor to the extent of the value of the care and treatment it has already provided and will provide in the future. In this case, the United States of America joined the McConnells in their lawsuit against King and Donegal pursuant to § 2651(b)(1).
[4] Because the trial court's declaratory judgment order was not
made a final judgment pursuant to Rule 54(b), A.R.Civ.P., the case was remanded to the trial court on June 23, 1989, in accordance to our policy stated in Foster v. Greer Sons,Inc., 446 So.2d 605 (Ala. 1984), overruled on other grounds byEx parte Andrews, 520 So.2d 507 (Ala. 1987). On June 27, 1989, the trial court amended its declaratory judgment order in order to certify it as a final judgment pursuant to Rule 54(b), A.R.Civ.P.; the record has been supplemented to include that Rule 54(b) certificate.
[5] A declaration page is a sheet prepared by Donegal that sets forth the following items of information for its policyholders: (1) the name and address of the named insured, (2) the items covered under the policy, (3) any endorsement made to the policy by Donegal, (4) the policy's coverage period, (5) the kinds of coverage given, and (6) the amounts of liability offered for each kind of coverage given.
[6] An interesting law review article highlighting the judicial difficulty of defining the term "residence" is Reese Green,That Elusive Word, "Residence", 6 Vand.L.Rev. 561 (1953).