This is an appeal from a dismissal of the plaintiff's declaratory judgment action seeking a determination that it was not liable under a homeowner's insurance policy for additional uninsured motorist coverage claimed by the defendant. The dismissal was premised upon the trial court's determination that the plaintiff had failed to join certain indispensable parties pursuant to Rule 19, A.R.Civ.P., namely the defendant's children.
In April 1988, Morton and Mary Girod, husband and wife, were issued a homeowner's insurance policy through Cincinnati Insurance Company of Cincinnati, Ohio (hereinafter "Cincinnati").[1] The policy was actually sold to the Girods through a Mobile insurance agency. The policy contained uninsured motorist coverage in the amount of $20,000 per claimant and $40,000 per occurrence and covered two vehicles owned by them. The policy also provided a so-called "Personal Umbrella Liability Endorsement" that provided a maximum liability coverage of $1,000,000 per accident.[2]
On or about April 9, 1989, the Girods were involved in a automobile collision on Interstate Highway I-10 in the State of Louisiana. Mr. Girod was killed when the car he was driving collided with another vehicle driven by Carl A. Fugatt.[3] Mrs. Girod, who was sitting next to her husband at the time of the accident, was seriously injured. Following the accident, Cincinnati waived its subrogation interest against Fugatt in order that Fugatt's insurance carrier could settle its claim with Mrs. Girod. Furthermore, Cincinnati tendered to Mrs. Girod an amount equal to its policy limit of uninsured motorist coverage — $80,000.[4] *Page 597 
Mrs. Girod did not agree that $80,000 was all that was payable under the terms of the policy, and she asserted that Cincinnati's tendering of the $80,000 to her did not satisfy what she claimed to be the company's liability for additional uninsured motorist coverage pursuant to the "Personal Umbrella Liability Endorsement." In short, she claimed additional uninsured motorist coverage up to the amount of $1,000,000.[5]
Because of the dispute involving the applicability of the umbrella coverage, Cincinnati filed this action in the Circuit Court of Mobile County on September 13, 1989, seeking a declaration of its rights and duties under the umbrella coverage. Cincinnati named as defendant Mrs. Girod, individually and as the administratrix of her husband's estate. On September 22, 1989, Mrs. Girod and her children (hereinafter "the Girods") filed a diversity action against Cincinnati in the United States District Court for the Eastern District of Louisiana. In that action, the Girods maintained that under Louisiana's wrongful death statute each of them has a statutory right to file an action for wrongful death against Cincinnati for damages due them and payable under its uninsured motorist policy, coverage which they maintained in their complaint included the umbrella endorsement.[6]
On September 26, 1989, Mrs. Girod, individually and as administratrix of her husband's estate, filed a motion to dismiss Cincinnati's action for declaratory judgment, pointing out that Cincinnati had failed in that action to join her children as indispensable parties. Mrs. Girod asserted that her children, through their wrongful death action against Cincinnati filed in the Louisiana federal court, had an interest to protect in regard to any determination of coverage under Cincinnati's umbrella endorsement. In its brief filed in opposition to Mrs. Girod's motion to dismiss, Cincinnati asserted that under Alabama law, which Cincinnati said applied to this action because of the fact that the essence of its dispute with Mrs. Girod concerned an interpretation of an insurance policy issued in the State of Alabama, it had sued the only necessary and proper party, namely Mrs. Girod, whom it sued both individually and as administratrix of her husband's estate. On December 15, 1989, the trial court granted Mrs. Girod's motion to dismiss Cincinnati's declaratory judgment action on the ground that Cincinnati had failed to join Mrs. Girod's children as indispensable parties. On January 8, 1990, Cincinnati appealed.
The issue here is whether an insurance company that has filed a declaratory judgment action against an insured's estate, which is claiming additional benefits under the policy, must name as indispensable parties the distributees of the insured's estate who might benefit from the resolution of that dispute. Because this dispute involves an interpretation of an insurance policy issued in the State of Alabama, under Alabama's conflicts of law rule the trial court would be obligated to apply the substantive law of Alabama, not the substantive law of Louisiana, even though the accident occurred there. SeeEx parte Owen, 437 So.2d 476, 481 (Ala. 1983); Harrison v.Insurance Co. of North America, 294 Ala. 387, 391, *Page 598 318 So.2d 253, 257 (1975); Furst Thomas v. Sandlin, 208 Ala. 490,492, 94 So. 740, 742 (1922).
When Cincinnati filed its declaratory judgment action, the only named insureds under its policy were Morton and Mary Girod. Therefore, any interest that the children of Mr. Girod might claim would be as distributees of his estate.
Thus, the issue may be restated as whether the distributees of an insured's estate are deemed to be "indispensable parties" to a declaratory judgment action filed by an insurance company against the estate. In the case of Prout v. Hoge, 57 Ala. 28,30-31 (1876), this Court, in addressing the concept of indispensable parties, stated:
 "The general rule in a court of equity is, that all persons having a material interest, legal or equitable, in the subject matter of a suit, must be made parties, either as plaintiffs or defendants. The rule proceeds on the principle that no man's rights should be controverted in a court of justice, unless he has full opportunity to appear and vindicate them; and further, that complete justice may be done and future litigation avoided, the performance of the decree being safe, because of the presence in court of all who have an interest in its subject matter. — Story's Eq.Pl. § 72."
In light of the rule, this Court cannot say that the distributees of Mr. Girod's estate, which has been named in the declaratory judgment action, are also deemed to be indispensable parties in that same action. At the time Cincinnati filed the declaratory judgment action, Mrs. Girod had been appointed administratrix of her husband's estate. As such, Mrs. Girod represented the interests of that estate; furthermore, she also protected and represented the interests of the estate's distributees. See Coastal States Life InsuranceCo. v. Gass, 278 Ala. 656, 180 So.2d 255 (1965). Finally, it must be remembered that any proceeds that Mrs. Girod as administratrix of her husband's estate might receive through the resolution of Cincinnati's declaratory judgment action would immediately become assets of that estate and subject to distribution to its distributees.
Therefore, we conclude that the trial court erred in dismissing the complaint because of Cincinnati's failure to join Mrs. Girod's children. Cincinnati had joined the only necessary and proper party, i.e., the only party who possessed an interest in the dispute, namely Mrs. Girod, whom it sued individually and as administratrix of her husband's estate. We, of course, express no opinion on the underlying dispute.
The judgment of dismissal is, therefore, due to be reversed and the cause remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] The period of coverage provided to the Girods under their homeowner's insurance policy ran from May 10, 1988, to May 10, 1989.
[2] "Umbrella liability coverage" is coverage offered through an insurance company to its insureds to pick up where that insurance company's primary coverage ends. The primary function of umbrella coverage is to provide additional liability security, as well as peace of mind, to an insured who hopes that he will never be involved in any substantial claim or lawsuit, but who, if he is involved in such an action, is assured that if damages are awarded against him those damages will be covered by the additional liability coverage afforded to him under his umbrella policy. See Appleman, Insurance Lawand Practice § 4909.85, at 452 (1981).
[3] Mr. Fugatt, not a party to this appeal, was insured by State Farm Mutual Automobile Insurance Company at the time of the accident. State Farm's policy provided liability coverage of $20,000 per person and $40,000 per occurrence to Mr. Fugatt.
[4] The $80,000 paid to Mrs. Girod by Cincinnati resulted from the "stacking" of the $40,000 per accident coverages provided on each of the two vehicles owned by the Girods at the time of their accident. Ala. Code 1975, § 32-7-23(c), permits a policy holder to "stack" coverages provided on vehicles insured under a single policy.
[5] The parties to this appeal refer to their dispute as one involving uninsured motorist coverage. Their dispute, of course, involves underinsured motorist coverage, because at the time of the Girods' collision with Fugatt, Fugatt was covered by liability insurance provided through another insurance company. References to an "uninsured" motorist is appropriate, however, because Alabama's definition of an "uninsured motor vehicle" includes an underinsured motor vehicle. Ala. Code 1975, § 32-7-23(b)(4). See also Lowe v. Nationwide Ins. Co.,521 So.2d 1309 n. 1 (Ala. 1988), in which this Court stated that the term "uninsured motorist" includes an "underinsured motorist" under Alabama's Motor Vehicle Safety-Responsibility Act.
[6] Louisiana's wrongful death statute, which appears at La. Civ. Code Ann. art. 2315.2 (West Cum. Supp. 1990), states in part the following:
"Art. 2315.2. Wrongful death action
 "A. If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result of the death:
 "(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children. . . ." (Emphasis added.)