Plaintiffs Harrison Ailey, James Gurley, and Bartley Thornton appeal from a summary judgment in favor of Nationwide Mutual Insurance Company (hereinafter "Nationwide") on their complaint seeking a declaratory judgment and a preliminary injunction regarding an insurance policy issued to Ailey, a Tennessee resident, by Nationwide. Specifically, the plaintiffs sought a declaration that Nationwide was obligated under its policy with Alley to provide uninsured motorist benefits to the plaintiffs for injuries they suffered in a multi-vehicle automobile accident in Alabama. The plaintiffs also sought to enjoin Nationwide from withholding its consent to their settlement with four of the defendants. The trial court denied the injunction on July 13, 1989, and entered summary judgment for Nationwide on March 8, 1990.
The accident that was the subject of that action involved a car driven by Lola Patterson, a Central Packaging Corporation truck driven by Willie Joe Davis, and an Adolph Coors Company truck driven by John James Sage. The plaintiffs sued all three drivers, as well as Central Packaging and Adolph Coors. Patterson was insured by Allstate Insurance Company, which paid the limits of liability under her policy, or $39,750. Central Packaging and its driver settled with the plaintiffs for $25,000, as did Adolph Coors and its driver.[1]
At the time of the accident, Ailey had in effect an automobile insurance policy with Nationwide that provided uninsured motorist benefits. Because that policy was issued to Ailey in Tennessee, we will apply Tennessee law in interpreting it. See Best v. Auto-Owners Ins. Co., 540 So.2d 1381 (Ala. 1989), and Cotton v. State Farm Mutual Ins. Co., 540 So.2d 1387
(Ala. 1989).
Nationwide refused to pay Ailey any uninsured motorist benefits, arguing that the other vehicles were not uninsured because the sum of the limits of all of the liability policies exceeded the uninsured *Page 600 
motorist limits under Ailey's policy. The plaintiffs take the position that, because Patterson's insurance was insufficient to pay their damages,[2] Alley is entitled to "underinsurance" coverage under his policy with Nationwide.
Ailey's policy defines "uninsured automobile" as follows:
 "[A]n automobile with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or is or becomes insolvent. . . ."
(Emphasis added.)
Nationwide correctly argues that the plaintiffs are not entitled to uninsured motorist benefits under the policy because, at the time of the accident, all of the vehicles involved had liability insurance with limits in at least the amounts required by the financial responsibility laws of the states where those vehicles were principally garaged. See Tenn. Code Ann. § 55-12-102(12) (1988); Ala. Code 1975, § 32-7-1
et seq. To determine whether the plaintiffs are entitled to underinsured motorist coverage by virtue of Tennessee law on stacking, which could override the limitations in the policy, we must turn to the relevant statutes and cases.
In 1982, Tennessee amended its uninsured motorist statute and eliminated a previous reference to "underinsured motorists," combining the two classifications under one definition:
 "'Uninsured motor vehicle' defined. — (a) For the purpose of this coverage, uninsured motor vehicle' means a motor vehicle whose ownership, maintenance, or use has resulted in the bodily injury, death, or damage to property of an insured, and for which the sum of the limits of liability available to the insured under all valid and collectible insurance policies, bonds, and securities applicable to the bodily injury, death, or damage to property is less than the applicable limits of uninsured motorist coverage provided to the insured under the policy against which the claim is made."
Tenn. Code Ann. § 56-7-1202(a)(1989) (emphasis added).
A recent Tennessee case, Dockins v. Balboa Ins. Co.,764 S.W.2d 529 (Tenn. 1989), explained the amendment and its effect:
 "In the original act section 56-7-1202, formerly section 56-1149, simply included as uninsured those vehicles on which there was appropriate liability coverage, but for which funds were unavailable to the injured insured because of the insurer's insolvency. And even that attempted definition was, and is, elsewhere limited. See T.C.A. § 56-7-1203. In 1974 section 56-7-1201(d)3 was amended to include 'underinsured motorists,' 1974 Tenn.Pub.Acts Ch. 697, a term that was later qualified with reference to cooperative use vehicles. 1977 Tenn.Pub.Acts Ch. 359.
 "These partial definitions were deleted by the 1982 amendments, and the substituted section 56-7-1202 eliminated the terms 'insolvency' and 'underinsured' and the proviso for cooperative use vehicles. It appears to us the Legislature simply combined those two categories in a single paragraph to require coverage by the insured's own insurer when the funds to which she is entitled from other policies, bonds, and securities cannot be collected. The reference to collectibility also appears in the last paragraph of section one of the amendment, now T.C.A. 56-7-1201(d).[3] *Page 601 
 "And this is precisely what the legislative history suggests. Senate Record No. 52 at 12-23 (March 11, 1982). Senator Davis, the sponsor, explained the revision of section 56-7-1202 as the elimination of the term 'underinsured,' which had, he said, been the subject of some confusion and misunderstanding. In an unmistakable reference to our decision in Rogers v. Tennessee Farmer's Mutual Insurance Co., 620 S.W.2d 476 (Tenn. 1981), the previous year, the Senator explained that under then-existing law an injured insured was not protected by her uninsured motorist coverage so long as the at-fault driver carried the per-person and per-accident limits established by the Financial Responsibility Act — even though the per-accident amount might be divided with several other injured persons and she did not receive the amount of her uninsured motorist limits.
". . . .
 "Moreover, the remainder of the 1982 enactment belies any conclusion the Legislature intended to transform uninsured motorist requirements into broad coverage, amounting, in effect, to personal injury protection."
764 S.W.2d at 532 (emphasis added). Even though it was decided prior to the 1982 amendment, Rogers v. Tennessee Farmer'sMutual Ins. Co., 620 S.W.2d 476 (Tenn. 1981), also emphasized the fact that Tennessee does not embrace broad coverage under its uninsured motorist statute.
Applying § 56-7-1202(a) to these facts, we consider it apparent that Nationwide is correct in its position that theavailable limits of liability on all policies applicable to the injury must be less than the limits of Ailey's uninsured motorist coverage before the uninsured motorist carrier is obligated to pay. The language of § 56-7-1202(a) supports that conclusion: "the sum of the limits of liability available to the insured under all valid and collectible insurance policies. . . ."
Although the limits of the policies covering Central Packaging, Adolph Coors, and their drivers are unknown, it is undisputed that the $25,000 offered under each policy did not exhaust those limits. Only if the sum of those limits is "less than the applicable limits of uninsured motorist coverage [here, $100,000] provided to the insured under the policy against which the claim is made," § 56-7-1202(a), is Nationwide responsible for underinsured motorist benefits.
The summary judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and ADAMS, JJ., concur.
[1] Although the limits of liability under those parties' policies are unknown, the parties concede that the settlements did not exhaust their coverages.
[2] Although Nationwide agrees that Patterson's insurance was insufficient to cover the plaintiffs' damages, it does not concede that their damages exceeded $200,000, which is the amount they allege as damages in their declaratory judgment action.
[3] That statute reads:
 "(d) The limit of liability for an insurer providing uninsured motorist coverage under this section is the amount of that coverage as specified in the policy less the sum of the limits collectible under all liability and/or primary uninsured motorist insurance policies, bonds, and securities applicable to the bodily injury or death of the insured." (Emphasis added.)