Elmer **FERRIS** and Shirley Ferris, Plaintiffs,

v.

Reginald **JENNINGS,** Defendant,

State Farm Mutual Automobile Insurance Company, Defendant–Intervenor.

Civ. A. No. 91–T–1382–N.

United States District Court, M.D. Alabama, Northern Division.

Dec. 28, 1993.

George Lamar Beck, Jr. and Dennis Richard Pierson, George L. Beck, Jr., P.C., and William Terry Travis, Montgomery, AL, for Elmer and Shirley Ferris.

Michael Baird Beers, Beers, Anderson, Jackson & Smith, P.C., Montgomery, AL, for Reginald Jennings.

David Earl Allred and R. Rainer Cotter, III, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, for State Farm Mut. Auto. Ins. Co., an Illinois corp.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

In this lawsuit, plaintiffs Elmer and Shirley Ferris have sued defendant State Farm Mutual Automobile Insurance Company, claiming benefits under certain underinsured motorist insurance contracts. Mrs. Ferris was injured in an automobile accident, and she and Mr. Ferris now seek to collect from State Farm proceeds for injuries not adequately covered by other insurance and which, as argued by the Ferrises, are due them under the underinsured motorists policies issued to them by State Farm. The Ferrises have invoked the jurisdiction of the court based on diversity of citizenship between the parties. 28 U.S.C.A. § 1332 (West 1966 & Supp.1993). This lawsuit is now before the court on a motion for summary judgment filed by State Farm. For the reasons set forth below, the motion will be granted.

## I. BACKGROUND

Mr. and Mrs. Ferris are residents of Wasilla, Alaska. On November 19, 1989, at an intersection in Montgomery, Alabama, an automobile in which Mrs. Ferris was a passenger collided with an automobile driven by Reginald Jennings, a resident of Piscataway, New Jersey. Mrs. Ferris reports severe injuries as a result of this accident—in particular, injuries to her knees which have required several surgeries and knee replacements and which will continue to require surgical procedures in the future.

On November 13, 1991, Mr. and Mrs. Ferris filed this lawsuit against Jennings alleging that the accident was caused by his negligence or wantonness and seeking compensatory and punitive damages. State Farm, which provided underinsured motorist coverage to the Ferrises, filed a motion to intervene on the grounds that a finding that Jennings was liable might require it to pay the Ferrises on the underinsured motorist policies if the damages assessed exceeded other available insurance. After the court permitted this intervention, State Farm filed a claim against Jennings for judgment in the amount of any money it was ultimately required to pay the Ferrises, and the Ferrises filed a claim against the insurance company, seeking a judgment to the full extent of the underinsured motorist policies for any damages not covered by other available insurance. Later, after all issues regarding Jennings had been resolved, the court denied as moot all pending claims against him and dismissed him from this litigation, leaving only the Ferrises' claim against State Farm.

After the Ferrises accepted payment from the other insurers liable to Mrs. Ferris, State Farm filed the motion for summary judgment currently before the court. The insurance company contends that, as a matter of law, the Ferrises are not entitled to any additional recovery under the underinsured motorist insurance contracts.

## II.  CHOICE OF LAW

■ A threshold issue in this case is which state's substantive laws should govern the Ferrises' claim. When a federal court exercises diversity-of-citizenship jurisdiction, the court is bound to apply the substantive law of the state in which it sits. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). The *Erie* doctrine extends to choice-of-law questions, so that this court sitting in diversity must apply the forum state's conflict-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Tang How v. Edward J. Gerrits, Inc.,* 961 F.2d 174, 178–79 (11th Cir.1992). In the instant case, therefore, the court must follow Alabama's choice-of-law rules. This much is not disputed by the parties.

■ To determine which of Alabama's choice-of-law rules to apply, the court must first "ascertain the nature of the problem involved, i.e., is the specific issue at hand a problem of law of contracts, torts, property, etc." *Garcia v. Public Health Trust of Dade County,* 841 F.2d 1062, 1064 (11th Cir.1988) (quoting *Acme Circus Operating Co., Inc. v. Kuperstock,* 711 F.2d 1538, 1540 (11th Cir. 1983)). The parties strongly dispute how to characterize this case—as a problem of tort or contract law—because it appears that this characterization is determinative of the Ferrises' rights against State Farm.

Mr. and Mrs. Ferris argue that the issue before the court in this case sounds in tort. In support of this argument, they assert that they originally brought this lawsuit against Jennings in tort and that the case into which State Farm intervened was, therefore, a tort action. They also contend that tort issues must necessarily be decided in their claim against State Farm—namely, Jennings's liability, the Ferrises' damages, and a possible defense by State Farm that Mrs. Ferris was contributorily negligent. Any contract issues, they argue, are collateral. Were the court to agree that this case sounds in tort, the choice-of-law rule it would apply would be *lex loci delicti,* or the "law of the place of injury." Under that rule, "an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred." *Fitts v. Minnesota Mining & Mfg. Co.,* 581 So.2d 819, 820 (Ala.1991). *See also Norris v. Taylor,* 460 So.2d 151, 152 (Ala.1984); *Bodnar v. Piper Aircraft Corp.,* 392 So.2d 1161, 1162 (Ala.1981). Because it is undisputed that the injury occurred in Alabama, Alabama law would apply if the "nature of the problem involved" in this case were one of torts.

State Farm argues that the issue before the court in this case sounds in contract. In support of its argument, the insurance company asserts that Jennings, the tort defendant in the original action, has been dismissed by the court and that the resolution of the case between the Ferrises and the insurance company requires an interpretation of the insurance contracts entered into between these two parties. State Farm further asserts that the possible presence of questions of tort law in this case does not transform the underlying contract dispute into one of torts. Were the court to agree with State Farm that this case sounds in contract, the choice-of-law rule it would apply would be *lex loci contractus,* which provides that "a contract is governed as to its nature, obligation, and validity by the law of the place where it was made...." *Ex Parte Owen,* 437 So.2d 476, 481 (Ala.1983) (per curiam).[1] *See also Cincinnati Ins. Co., Inc.*

---

1. The *lex loci contractus* rule does not apply where "the parties intend the law of some other place to govern" or where the contract "is to be wholly performed in some other place." *Ex Parte Owen,* 437 So.2d at 481. The contract at issue contained no choice-of-law provision. As to performance of the contract, while the parties have not addressed this exception, it appears that the contract was intended primarily to be performed in Alaska, the state of the Ferrises' residence. Accordingly, if this is a contract case, neither exception applies and the place where the contract is made determines which state's law the court must apply.

*v. Girod,* 570 So.2d 595, 597 (Ala.1990); *Donegal Mut. Ins. Co. v. McConnell,* 562 So.2d 201 (Ala.1990); *Gravley v. Nationwide Mut. Ins. Co.,* 553 So.2d 52, 53 (Ala.1989); *Davis v. Hartford Ins. Co. of Illinois, Inc.,* 456 So.2d 302, 304 (Ala.1984). Because it is undisputed that the insurance contracts at issue here were made and delivered in Alaska, the law of Alaska would apply if the "nature of the problem involved" in this case were one of contracts instead of torts.

In making this determination, this court is bound to decide the way it appears the Alabama Supreme Court would decide. *Shapiro v. Associated Intern. Ins. Co.,* 899 F.2d 1116, 1118 (11th Cir.1990). A review of the case law shows that the Alabama Supreme Court has repeatedly defined cases similar to the one at hand as contracts cases. Specifically, the Alabama Supreme Court has held that, in insurance disputes arising from automobile accidents, a trial court must apply the law of the state where the contract was made and not the law of the state where the accident occurred. *Girod,* 570 So.2d at 597 ("Because this dispute involves an interpretation of an insurance policy issued in the State of Alabama, under Alabama's conflicts of law rule the trial court would be obligated to apply the substantive law of Alabama, not the substantive law of Louisiana, even though the accident occurred there"); *Ailey v. Nationwide Mut. Ins. Co.,* 570 So.2d 598, 599 (Ala. 1990) ("Ailey had in effect an automobile insurance policy with Nationwide that provided uninsured motorist benefits," and "Because that policy was issued to Ailey in Tennessee, we will apply Tennessee law in interpreting it"); *Donegal,* 562 So.2d at 203 (although accident occurred in Tennessee, trial court must apply law of Pennsylvania when interpreting insurance policy executed in Pennsylvania); *see also Cotton v. State Farm Mut. Auto. Ins. Co.,* 540 So.2d 1387, 1388 (Ala.1989); *Davis,* 456 So.2d at 304.

In light of this case law, the court must reject the Ferrises' argument that the case at hand sounds in tort. Alleged tortfeasor Jennings has been dismissed, and what remains before the court is a claim by the Ferrises against State Farm for additional insurance coverage. Although the dispute between the Ferrises and the insurance company might require the court to determine if Jennings was liable to the Ferrises and for how much, these issues are dependent on and thus collateral to the Ferrises' contract claim against the insurance company and do not require the court to apply the law of the place of injury as the Ferrises argue. The Alabama Supreme Court has not adopted the Ferrises' theory, and has applied the law of the state where the contract was made even when the complaint contains a negligence claim, *Girod,* 570 So.2d at 597, and when the amount of damages remains disputed. *Donegal,* 562 So.2d at 202. To decide this case, the court must interpret the underinsured motorist insurance contracts at issue. Because these contracts were made and delivered in the State of Alaska, this court will now analyze the Ferrises' claim under the substantive laws of Alaska.[2]

## III. COVERAGE UNDER ALASKA LAW

### A. *Summary Judgment Standard*

■ The court must now consider State Farm's motion for summary judgment on the Ferrises' claim for additional benefits. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judg-

---

**2.** Because this court decides that the dispute against State Farm is one of contract—with no remaining tort claims against Jennings—it is unnecessary to consider the Ferrises' argument that Alabama does not "analyz[e] separate issues within a single case for choice of law decisions and apply[ ] different laws to different parts of the same case"—a process known as "depacage." *Morris v. SSE, Inc.,* 912 F.2d 1392, 1395 (11th Cir.1990). Because this case is one of contract law in the first instance, the court will apply the laws of Alaska; if collateral tort issues were to be decided, the court would then need to determine whether to engage in depacage and apply Alabama law to those issues. Because this case is disposed of solely on the basis of contract law, however, the court need not make this determination.

ment would be inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities of the movant and the nonmovant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial).

### B. *Policy Coverage*

It is undisputed that Mr. and Mrs. Ferris have already received insurance payments totalling $250,000 from the following insurers: $20,000 from Safeway, the insurer of Jennings's automobile; $100,000 from Hanover/Amgro, Jennings's liability insurer; $25,000 from GEICO, the provider of underinsured motorist coverage on the vehicle in which Mrs. Ferris was a passenger; $5,000 in medical payments coverage from GEICO; and $100,000 in medical payments coverage from State Farm.

#### 1. *Maximum Liability*

Mr. and Mrs. Ferris contend that, in addition to these insurance proceeds already collected, they are entitled to coverage under the underinsurance provisions of two insurance policies they have with State Farm; each policy provides coverage in the amount of $100,000.[3] State Farm argues that it is not obligated to pay underinsured benefits because the Ferrises have already received payments in excess of the insurance company's maximum liability.

For purposes of summary judgment, the court will assume that the Ferrises' damages exceed the $250,000 which they have already recovered. The court concludes, however, that under both Alaska's underinsured motorist statute, in particular Alaska Stat. § 28.22.211, and the plain language of the Ferrises' insurance policies with State Farm, the Ferrises may not recover any additional benefits.

Alaska's underinsured motorist statute provides, in relevant part:

"(a) The maximum liability of the insurance carrier under the uninsured and underinsured motorists coverage required under this chapter is the difference between the coverage limit of liability and the amount paid to the insured by or on behalf of the uninsured and underinsured motorist.

(b) Amounts payable under the uninsured motorists and underinsured motorists coverage required under this chapter shall be reduced by...

(2) amounts paid or payable under any valid and collectible automobile medical payments insurance or bodily injury or death liability insurance; and

(3) amounts paid by or on behalf of the uninsured or underinsured motorist."

Alaska Stat. § 28.22.211 (1993).

The statute therefore directs that State Farm's liability under the underinsured motorist policies is to be reduced by the $105,000 the Ferrises received for "medical payments" and the $145,000 "paid by or on behalf of the uninsured or underinsured motorist."[4] Thus, the Ferrises must have coverage in excess of $250,000 before they can recover under the underinsurance provisions from State Farm. Assuming arguendo that Mr. and Mrs. Ferris could "stack" the $100,000 of coverage available under each of their policies, the total of $200,000 in coverage

---

**3.** Under the uninsured and underinsured motorist provisions of the policies, State Farm "will pay damages for *bodily injury* and *property damage* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle* or an *underinsured motor vehicle.* The *bodily injury* or *property damage* must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle* or an *underinsured motor vehicle.*"

**4.** Because the statute allows the subtraction of "any valid and collectible automobile medical payments insurance," the court will not entertain the Ferrises' unsupported contention that the $100,000 paid to the Ferrises by State Farm should not be subtracted because it was collected under the very policy at issue.

would not exceed the amounts already received by them.[5]

■ An application of the plain language of the policies yields the same result. The "Limits of Liability" provisions for the coverage in question provide, in relevant part:

"5. If the damages are caused by an underinsured motor vehicle the most we will pay will be the lesser of:

a. the difference between the limits of liability of this coverage, and the amount paid to the insured by or for any person or organization who is or may be held legally liable for the bodily injury or property damage; or

b. the amount of the damages sustained but not recovered."

Here again, assuming that there are damages sustained but not recovered, the $250,000—amounts paid to the insured—exceeds the limits of liability.[6] In deciding whether underinsured motorist coverage should be reduced by the amount of other insurance proceeds, the Alaska Supreme Court has held that such reductions are required where the policy clearly provides for them. *Burton v. State Farm Fire and Cas. Co.*, 796 P.2d 1361, 1364 (Alaska 1990). This court concludes, therefore, that the Ferrises are not entitled to any additional benefits under the underinsured motorist provisions of their policies with State Farm.

### 2. Medical Payments

■ Mr. and Mrs. Ferris also contend that they are entitled to additional medical payments coverage. State Farm has paid the Ferrises $100,000 in medical payments on one of the two policies and argues that it is not obligated to pay medical benefits on the second policy. In denying payment under the second policy, State Farm relies on Amendatory Endorsement 6025BB.1, an attachment to the policies sold to the Ferrises by State Farm. This Endorsement provides, in relevant part:

"If two or more policies issued by us to you, your spouse or your relatives provide vehicle medical payments coverage and apply to the same bodily injury sustained:

a. while occupying a non-owned car, a temporary substitute car; or

b. as a pedestrian

the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability."[7]

In the Ferrises' case, both policies had identical coverage, so that by paying the Ferrises $100,000 on one policy, State Farm paid on the "policy with the highest limit of liability."

■ This Endorsement is in substance an "anti-stacking" provision for medical payments coverage. Under Alaska law, a court will enforce such an anti-stacking provision where the language of the policy clearly intends to prevent stacking and where the insured receives an additional benefit from the premiums paid for the additional policy, notwithstanding the inability to stack the additional policy. *Hillman v. Nationwide Mut. Fire Ins. Co.*, 758 P.2d 1248, 1254–55 (Alaska 1988); *Fireman's Fund Ins. Companies v. Chapman*, 664 F.Supp. 1316, 1317–18 (D.Alaska 1987). The court concludes that the language of the Endorsement—"shall not exceed that of the policy with the highest limit of liability"—is clear and unambiguous in its intent to prohibit recovery on more than one policy, and the Ferrises have pointed the court to no other policy provisions in conflict with this language. The court also

---

5. Whether the Ferrises can stack their policies is disputed by the parties. Because the Ferrises cannot recover even if they are permitted to stack their policies, however, it is not necessary to decide whether stacking is allowed under the laws of Alaska.

6. The court is mindful that, under Alaska law, ambiguous contract terms are to be resolved in favor of the insured. *U.S. Fire Ins. v. Colver*, 600 P.2d 1, 3 (Alaska 1979). The court concludes, however, that the Limits of Liability provisions are not "reasonably subject to differing interpre-

tations," and not, therefore, ambiguous. *Jarvis v. Aetna Cas. & Sur.*, 633 P.2d 1359, 1363 (Alaska 1981) (quoting *Modern Constr., Inc. v. Barce, Inc.*, 556 P.2d 528, 529 (Alaska 1976)). Where no ambiguity exists, the court "should not do violence to the plain terms of a contract." *Providence Washington Ins. Co. of Alaska v. Fireman's Fund Ins. Companies*, 778 P.2d 200, 203 (Alaska 1989) (quoting *Ness v. National Indem. Co. of Nebraska*, 247 F.Supp. 944, 947 (D.Alaska 1965)).

7. The Ferrises do not dispute the application of subparagraph (a) to Mrs. Ferris.

concludes that the Ferrises did derive an additional benefit from the second policy, specifically, medical payments coverage for Mr. Ferris for bodily injury sustained by him, including injury that might have been sustained by him in the accident with Jennings. Clearly, State Farm exposed itself to additional risk in covering two persons as opposed to just one.

■ The Ferrises contend that, even if the Endorsement prevents stacking, it only does so with respect to the "same bodily injury." They assert that they are seeking coverage under the second policy for a "different" bodily injury. Under the Ferrises' theory, therefore, an insured could collect up to the maximum amount under a policy for each "injury" sustained during an automobile accident—for example, $100,000 for a back injury and $100,000 for a knee injury.

The court must reject the Ferrises' spin on "same bodily injury." "Bodily Injury" is a defined term in the State Farm policy and "means bodily injury to a person and sickness, disease or death which results from it." Thus, the policy defines bodily injury broadly to encompass ancillary harms. The court further concludes from a review of the policy language that the singular "bodily injury" is used throughout to encompass multiple "injuries." For example, the policy states that it covers "medical expenses for bodily injury: sustained while occupying or through being struck by a vehicle...." and that it will "pay reasonable medical expenses, for bodily injury caused by accident, for services furnished within three years of the date of the accident." Although the singular is used, the policy plainly covers all individual injuries sustained during the course of an accident. To construe bodily injury as the Ferrises suggest would require an insured to purchase a separate policy for each individual injury likely to be sustained as a result of an automobile accident. Insurance policies, of course, do not operate in this manner.

The Ferrises further argue that the anti-stacking provision must be read in conjunc-

tion with the paragraph preceding it, which provides that:

> "No person for whom medical expenses are payable under this coverage shall recover more than once for the same medical expense under this or similar vehicle insurance."

The Ferrises argue that the "same bodily injury" restriction "simply confirms that an injured person cannot under one policy *or* multiple policies recover twice for a medical expense that concerns the 'same bodily injury.'"[8] This argument is unavailing for two reasons. First, this reading of "same bodily injury" would make the second paragraph redundant. Second, the fact that the policy speaks of "medical expenses" in one paragraph and then immediately follows with the term "bodily injury" strongly suggests that the policy intends the second paragraph to have a different significance.

The court concludes that the anti-stacking provision contained in Amendatory Endorsement 6025BB.1 is valid under Alaska law and that "same bodily injury" encompasses all injury to Mrs. Ferris sustained during the accident with Jennings. Accordingly, this anti-stacking provision operates to prevent the Ferrises from recovering additional medical payments benefits under the second policy with State Farm.

### 3. *Public Policy of Alabama*

■ Mr. and Mrs. Ferris argue in the alternative that, assuming the court must apply Alaska law and that such application denies them additional coverage, the court should hold that enforcement of the terms of the insurance contracts in these circumstances is against the public policy of the State of Alabama. They contend that it is the public policy of Alabama "to insure that a person injured at the hands of an uninsured or underinsured motorist be able to recover, from whatever source available, up to the maximum amount of his or her damages and to insure that the insurer will not be allowed to insert provisions in its policy limiting or restricting recovery by the insured up to the limits of the policy."[9]

---

**8.** Plaintiffs' Response to Defendant's Motion for Summary Judgment, at 13.

**9.** Plaintiffs' Response to Defendant's Motion for Summary Judgment, at 7.

In making this argument, the Ferrises rely primarily on Alabama's uninsured motorist statute, 1975 Ala.Code § 32–7–23, and Alabama case law.[10] Section 32–7–23 sets forth certain minimum requirements for uninsured motorist coverage.[11] This statute, however, is in effect against only those insurance policies "deliver[ed] in [Alabama] with respect to any motor vehicle registered or principally garaged in [Alabama]." 1975 Ala.Code § 32–7–23(a). The cases cited by the Ferrises also speak only to limitations placed on insurance contracts delivered in Alabama. The cases cited and the uninsured motorist statute together define the requisite provisions for an uninsured motorist contract *made in Alabama* to be enforced by the courts of Alabama. Since the court is not applying Alabama law, however, the Ferrises' references do not support their argument that the application of Alaska law to the insurance contracts in question is so contrary to the public policy of Alabama that this court should refuse to enforce the contracts as written.

The Ferrises cite one case, *Wixom Bros. Co. v. Truck Ins. Exchange*, 435 So.2d 1231 (Ala.1983), in which the Alabama Supreme Court held that the public policy of the forum state may prevent enforcement of a contract valid in the state where it was made. In *Wixom*, the Alabama Supreme Court considered whether to enforce a policy restriction— valid under the law of the state where the contract was made—excluding liability when the incident giving rise to the liability occurred after the policy's period of coverage. In deciding not to enforce the restriction, the Court stated:

> "the public interest in this state would be injuriously affected in such a substantial manner by the enforcement of the coverage restriction . . .; the private right to contract in that manner, therefore, must yield to the public interest opposing such a restriction."

*Id.* at 1234 (citation omitted).

This court is of the opinion that, notwithstanding the *Wixom* case cited by the Ferris-es, the Alabama Supreme Court would not refuse to enforce the provisions of the Ferrises' insurance policies with State Farm under the laws of Alaska. First, *Wixom* is of questionable authority since its interpretation of the insurance provisions at issue has been overruled. *U.S. Fidelity & Guar. Co. v. Warwick Development Co., Inc.*, 446 So.2d 1021, 1024 (Ala.1984); *Truck Ins. Exchange v. Wixom Bros. Co.*, 460 So.2d 864 (Ala.1984). The court will assume, however, as the Ferrises urge, that *Wixom*'s holding—that public policy can prevent the enforcement of an insurance contract valid in the state where it was made—remains in force.

The Alabama Supreme Court has declined, implicitly and explicitly, to hold that restrictions in uninsured motorist policies—valid in the states where made—are so against the public policy of Alabama as to justify a refusal to enforce those contracts. In *Ailey v. Nationwide Mut. Ins. Co.*, 570 So.2d 598 (Ala.1990), the plaintiff challenged the insurer's denial of benefits under an uninsured motorist policy. In affirming summary judgment for the insurer, the Alabama Supreme Court held that certain maximum liability policy restrictions—similar to the provisions at issue in the instant case—were enforceable under Tennessee law. In concluding that "Nationwide is correct in its position that the *available* limits of liability on all policies applicable to the injury must be less than the limits of Ailey's uninsured motorist coverage before the uninsured motorist carrier is obligated to pay," *id.* at 601, the court implicitly rejected the argument that such restrictions are unenforceable under the public policy of Alabama. In another case, *Garnett v. Allstate Ins. Co.*, 567 So.2d 1265 (Ala. 1990), the Alabama Supreme Court explicitly held that enforcement of an uninsured motorist contract under Georgia law, which operated to deny the plaintiff the full benefits available under his policies, did not violate

---

10. *See, e.g. State Farm Mut. Auto. Ins. Co. v. Baldwin*, 764·F.2d 773 (11th Cir.1985); *Thompson v. American States Ins. Co.*, 687 F.Supp. 559 (M.D.Ala.1988); *Great Central Ins. Co. v. Edge*, 292 Ala. 613, 298 So.2d 607 (1974); *State Farm Auto. Ins. Co. v. Reaves*, 292 Ala. 218, 292 So.2d 95 (1974); *State Farm Mut. Auto. Ins. Co. v. Cahoon*, 287 Ala. 462, 252 So.2d 619 (1971).

11. Alabama, unlike Alaska, makes no distinction between uninsured and underinsured motorists. *See* 1975 Ala.Code § 32–7–23(b).

the public policy of Alabama. *Id.* at 1267 ("Georgia law is clear on the point, and we see no overriding public policy interest that would compel us to decline to follow the clear law of Georgia"). This court holds that its application of Alaska law to the Ferrises' underinsured motorist policies with State Farm does not so violate the public policy of Alabama as to warrant a refusal to enforce the provisions of those policies.

An appropriate judgment will be entered.

### JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of this court:

(1) That the motion for summary judgment, filed by defendant State Farm Mutual Automobile Insurance Company on July 13, 1993, is granted; and

(2) That judgment is entered in favor of defendant State Farm Mutual Automobile Insurance Company and against plaintiffs Elmer and Shirley Ferris, with plaintiffs taking nothing by their complaint.

It is further ORDERED that costs are taxed against plaintiffs Elmer and Shirley Ferris, for which execution may issue.